[Crim. No. 2513. In Bank.—February 1, 1923.]

In re Application of FRED F. McLAIN for Writ of Habeas Corpus.

[1] LEGISLATURE—DELEGATION OF POWER.—The power conferred upon the legislature to make laws cannot be delegated by it to any subordinate body.

[2] CRIMINAL LAW—OFFENSE—DEFINITION.—An offense which may be the subject of criminal procedure is an act committed, or omitted, in violation of public law, either forbidding or commanding it.

[3] ID.—MOTOR VEHICLE ACT—REGULATION OF SPEED—UNCONSTITU-TIONAL DELEGATION OF POWER OF LEGISLATION.—The provision of section 22a of the Motor Vehicle Act (Stats. 1919, pp. 220, 221) attempting to confer power upon the California Highway Commission to establish a maximum rate of speed, less than the rate established by law, over any bridge, etc., state highway, or portion

thereof, is an unconstitutional delegation of power by the legislature and void; and the detention of one for a violation of such a regulation is unlawful for this reason, as well as because the statute fixes no penalty for such violation.

[4] ID.—ENFORCEMENT OF LAW—DELEGATION OF POWER.—For the proper enforcement of its laws, the legislature may delegate a power to an officer, board, or commission to determine some fact or state of things upon which the law makes, or intends to make, its own action depend; but in such cases the distinction between the legislative and administrative function must be recognized and enforced and the distinction is fundamental. Where the charge is of crime it must have clear legislative basis.

APPLICATION for a Writ of Habeas Corpus to discharge from custody the petitioner, who was charged with violating the Motor Vehicle Act. Writ granted and petitioner discharged.

The facts are stated in the opinion of the court.

David R. Faries, J. Allen Davis and William B. Gilroy for Petitioner.

Thos. Lee Woolwine, District Attorney, for Respondent.

WASTE, J.—This is an application for release on a writ of *habeas corpus.* It appears from the petition that the petitioner was convicted and ordered imprisoned for the alleged violation of the provisions of the Motor Vehicle Act.

The essential facts are that the petitioner operated and drove an automobile over and upon a certain bridge, a portion of Colorado Street, a public highway in the city of Eagle Rock, and between certain signs or limit markers erected and standing at each extremity thereof, at a rate of speed of twenty-eight miles per hour, in violation of an order of the California Highway Commission fixing the maximum rate of speed of vehicles traveling over said bridge and between the limit markers at fifteen miles per hour. For this offense he was arrested, found guilty, and sentenced to imprisonment in the county jail.

It appears that prior to the arrest and conviction of the petitioner the California Highway Commission, by virtue of authority assumed by it under the provisions of section 22a of the Motor Vehicle Act (Stats. 1919, pp. 220, 221), estab-

lished a speed limit of fifteen miles per hour for all vehicles traveling over this particular bridge, and caused to be erected signs marking the location and limits of the highway to which such rate of speed applied. By section 1 [4] of the vehicle act (Stats. 1919, p. 193), for the purposes of the act, the word "highway" is made to include any bridge intended or used by the general public for the passage of vehicles. Section 22a, above referred to, provides, in substance, that any person operating or driving an automobile on the public highways shall operate and drive the same in a careful and prudent manner and at a rate of speed not greater than is reasonable and proper, having regard to the traffic and use of the highway; provided, that it shall be unlawful to operate or drive at a rate of speed in excess of thirty-five miles an hour, with a limitation of speed in territory closely built up and in the business district of incorporated cities, and when approaching grade crossings and intersecting highways. The section then provides "that the maximum rate of speed over any bridge, dam, trestle, culvert, causeway or viaduct as well as the maximum rate of speed over any state highway or portion of state highway may be established by the state highway commission at less than the rate established by law, when in the judgment of said commission the safety of persons using the highway or the protection of the highway shall be promoted thereby, but whenever any such different rate of speed is so established by said commission, the commission shall cause to be erected suitable signs to mark the location and limits of the highway to which said different rate of speed shall apply, and such signs shall be placed at a distance of not less than one hundred feet or at a greater distance than one hundred fifty feet from the highway or portion of highway or from the approaches of any bridge, dam, trestle, culvert, causeway or viaduct with respect to which such different rate of speed may be so established. In the case of a bridge, dam, trestle, culvert, causeway or viaduct, such maximum rate of speed so established by said commission shall not be less than ten miles an hour, and in the case of any other highway or portion of highway, such maximum rate of speed so established shall not be less than fifteen miles an hour." The statute provides (sec. 32a, Stats. 1917, p. 410) that any person *violating any of its provisions* (the italics are ours) shall be

guilty of a misdemeanor and, upon conviction, shall be punished in the manner therein provided. Nothing is said, in express terms or by necessary implication, that would make a violation of any of the regulations or rules of the Highway Commission a violation of the act, or punishable as such.

[1] The conviction and imprisonment of the petitioner rest upon the validity of the above-quoted portion of section 22a. His contention is that there is here an attempted unconstitutional delegation of power by the legislature to the Highway Commission. It is settled, of course, beyond controversy, that the power conferred upon the legislature to make laws cannot be delegated by it to any subordinate body. If the power to be exercised by the Highway Commission under the provisions of the above section amounts to a law-making power, as contended for by the petitioner, it follows that such provision must be unconstitutional. (Beatty, C. J., in *Ford* v. *Harbor Commrs.*, 81 Cal. 19, 37 [22 Pac. 278].) The legislature cannot delegate its power to make laws. (*Harbor Commrs.* v. *Redwood Co.*, 88 Cal. 491, 494 [22 Am. St. Rep. 321, 26 Pac. 375]; *Locke's Appeal*, 72 Pa. St. 491 [13 Am. Rep. 716]; *Field* v. *Clark*, 143 U. S. 649, 694 [36 L. Ed. 294, 12 Sup. Ct. Rep. 495, see, also, Rose's U. S. Notes].) The principle applies to a case where it is sought substantially to prescribe a criminal offense by the regulation of a department. [2] It is a principle of criminal law that an offense which may be the subject of criminal procedure is an act committed, or omitted, "in violation of a public law either forbidding or commanding it." (8 Am. & Eng. Ency. of Law, 2d ed., 279; *United States* v. *Eaton*, 144 U. S. 677, 687 [36 L. Ed. 591, 12 Sup. Ct. Rep. 764, see, also, Rose's U. S. Notes]; sec. 15, Pen. Code.) The act nowhere declares that it shall be unlawful to drive or operate an automobile over a bridge, or other designated portion of the highway, at a rate of speed greater than that fixed by the Highway Commission, but it seemingly attempts to confer upon the commission the power to so declare. (*Ex parte Cox*, 63 Cal. 21.) In that case the legislature delegated to the board of viticultural commissioners the power to make certain rules in the nature of quarantine, to prevent the importation of diseased vines. The act expressly provided that any willful violation of such rules should constitute a mis-

demeanor. Cox was discharged upon *habeas corpus* by the court, he having been convicted of violating certain of the rules and regulations, the opinion holding that the legislature had no authority to confer upon the board the power to declare what acts should constitute a misdemeanor.

There is very little difference, if any, in effect between the portion of the vehicle act here under attack and the section of the act to provide for the proper sanitary condition of factories and workshops (Stats. 1889, p. 3) which this court had under consideration in *Schaezlein* v. *Cabaniss,* 135 Cal. 466 [87 Am. St. Rep. 122, 56 L. R. A. 733, 67 Pac. 755], and which laid down certain definite regulations relating to sanitation, ventilation, and working conditions in factories and workshops. It further provided, in section 4, that if, in such places, any process or work was carried on by which dust or injurious gases were generated that were liable to be inhaled by the persons employed therein, and it appeared to the commissioner of the bureau of labor statistics that such inhalation could, to a great extent, be prevented by the use of some mechanical contrivance, the commissioner should direct that such contrivance should be provided and used. The concluding section provided a penalty for "violating any of the provisions of the act." Schaezlein and others were convicted of having unlawfully refused and neglected, after notice, to provide and use a suction device in a metal-polishing shop, within a reasonable time after having been directed by the commissioner so to do. The ultimate question there presented was the constitutionality of section 4 of the act just quoted. The court said (at page 471) : "The manifest objection to this law is, that upon the commissioner has been imposed not the duty to enforce a law of the legislature, but the power to make a law for the individual, and to enforce such rules of conduct as he may prescribe. It is thus arbitrary, special legislation, and violative of the constitution." We are unable to draw a distinction between the effect of that decision on the situation there considered and its application to the facts here.

The statute itself distinguishes between the rates of speed prescribed by the legislature and those to be determined by the commission in such way as to be practically determinative of the question we are considering. It declares that the maximum rate of speed over bridges or over any portion of

the highway "may be established by the State Highway Commission at *less than the rate established by law.*" (The italics are ours.) Here seems to be a plain recognition by the legislature that the rates of speed to be determined by the commission are not to have the effect of law. **[3]** There are, therefore, two sufficient reasons why the detention of the petitioner is unlawful. Viewed as an attempt to legislate concerning the rate of speed for vehicles over the bridge, as part of the highway, the declaration of the commission was without authority, and void. Accepted as a rule or regulation for vehicles using the bridge, the statute has fixed no penalty for its violation.

**[4]** For the proper enforcement of its laws, the legislature may delegate a power to an officer, board, or commission to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. (*Field* v. *Clark, supra; United States* v. *Grimaud,* 220 U. S. 506, 520 [55 L. Ed. 563, 31 Sup. Ct. Rep. 480, see, also, Rose's U. S. Notes]; *Harbor Commrs.* v. *Redwood Co., supra.*) But in such cases the distinction between the legislative and administrative function must be recognized and enforced. "The distinction is fundamental. Where the charge is of crime it must have clear legislative basis." (*United States* v. *George,* 228 U. S. 14, 22 [57 L. Ed. 712, 33 Sup. Ct. Rep. 412, see, also, Rose's U. S. Notes].)

The petitioner is ordered discharged.

Myers, J., Lennon, J., Seawell, J., Kerrigan, J., Lawlor, J., and Wilbur, C. J., concurred.