[Civ. No. 16610.   Second Dist., Div. One.   Feb. 28, 1949.]

COLUMBIA SPECIALTY COMPANY (a Copartnership), Appellant, v. OTTO BREMAN et al., Respondents.

W. Torrence Stockman for Appellant.

Jack Carl Greenberg for Respondents.

THE COURT.—This is an appeal from the judgment.

The complaint alleges that, ''plaintiff and defendants entered into a written contract, whereby plaintiff agreed to sell and defendants agreed to accept and buy goods, wares and merchandise known as a drainage cleaner being named 'Universal Drain Cleaner'.

## " III

"That in fulfillment of the aforesaid contract, plaintiff sold and delivered to the defendants, and the defendants bought and agreed to pay for the following set forth 'Universal Drain Cleaners' at the agreed price set opposite upon the days and dates indicated:

| Date | Inv. # | Quantity | Price |
|------|--------|----------|-------|
| 6/14/46 | 1131 | 27 gross | $1,600.30 |
| 6/22/46 | 1132 | 18 " | 1,066.86 |
| 6/29/46 | 1134 | 18 " | 1,066.86 |
| 7/16/46 | 1140 | 17½ gross | 1,037.23 |
| | | | $4,771.25 |

## "IV

"That payment of the whole of said sums has been demanded, but defendants have failed, neglected and refused to pay said sums or any part or portion thereof, and that the whole thereof is due, owing and unpaid to plaintiff from said defendants. That there are no setoffs or counterclaims against said amounts."

The answer admits the allegation above set forth, but denies that any sum is due. The answer further alleges as a separate defense, "That the supposed contract or agreement alleged in the complaint in this action and by which the defendants are sought to be charged was and is invalid, inasmuch as the manufacture of said goods, wares and merchandise known as a draining cleaner, known as 'Universal Drain Cleaner' is illegal; that the sale, distribution or use of the said draining cleaner known as 'Universal Drain Cleaner' is in direct violation of the Uniform Plumbing Code, and that the sale, distribution or use of this item is prohibited by the Los Angeles Municipal Code; that the sale, distribution or use of said item is in violation of plumbing and health codes of the State of California and other states; that the draining cleaner known as 'Universal Drain Cleaner' is a definite health menace due to the ease with which pollution could flow back into the water system, and is therefore in direct violation of the plumbing and health codes of the State of California and other states.

## " II

"That when said defendants ascertained that the sale, use or distribution of said 'Universal Drain Cleaner' was prohibited by the Los Angeles Municipal Code, Uniform Plumbing Code, and plumbing and health codes of the State

of California and other states, said defendants gave notice of rescisson to the plaintiffs in writing and demanded that said plaintiffs receive and take back and accept the eighty and one-half (80½) gross of 'Universal Drain Cleaners' in possession of the defendants; that said plaintiffs refused to receive and take back said 'Universal Drain Cleaners.' ''

The court found in substance that the above quoted allegations of the complaint were true, but further found, ''That it is true that the aforementioned contract was and is invalid inasmuch as the said cleaner known as the Universal Drain Cleaner is illegal; that the sale, distribution or use of the said cleaner is in direct violation of the Uniform Plumbing Code, and that the sale, distribution or use of the said cleaner is prohibited by the Los Angeles Municipal Code; that the sale, distribution or use of said item is in violation of Plumbing and Health Codes of the State of California; that the Universal Drain Cleaner is a definite health menace due to the ease with which polution could flow back into water systems. That said contract was malum in se and void ab initio.'' And concluded as a matter of law that, ''plaintiff is not entitled to recover from the defendants any amount whatsoever'' and that, defendants are not entitled to recover any amount from plaintiff upon defendants' counterclaim.''

It is contended on appeal that ''Plaintiff was and is entitled to judgment on the pleadings'' and that the evidence does not support the findings; also that, ''There was no evidence that the sale and distribution (as distinguished from use) of the Universal Drain Cleaner is in violation of the Uniform Plumbing Code, Los Angeles Municipal Code, or Plumbing and Health Codes of the State of California and other states.'' That ''there was no competent evidence that the use of the Universal Drain Cleaner is in violation of any city, county or state code.'' It is also argued by appellant that, ''No competent proof was offered that the use of the article was prohibited by the State of California or any other State in the United States, or any other country in the world.

''The contract between the parties was for the 'exclusive right of distribution of said Universal Drain Cleaner' which of course gave the defendants the right to sell this article throughout the world and in fact defendants did send samples of the Universal Drain Cleaner 'all over the world.' ''

Respondents rely on the contention that, ''A contract against express provisions or general policy of any particular statute or which is injurious to the public is illegal and void,''

and that, "A contract which is detrimental to public health, welfare or safety is malum in se and therefore void."

The article which is the subject of the litigation is, as described in appellant's brief, "a device consisting of a rubber hose to which was attached at one end a rubber collar suitable to slipping over and remaining firmly attached to a water outlet, i. e., spigot or faucet. To the other end of the hose was connected a rubber plug suitable to being inserted in and held firmly by the outlet of a sink, i. e., the drain pipe. The purpose of the device was to facilitate the cleaning of clogged sink drains by attaching as above set out, and then turning the water on, and thus utilizing the force of the water pressure to dislodge the stoppage."

The evidence consists of the testimony of one of the plaintiffs, one of the defendants and two witnesses for the defendant, a "Universal Drain Cleaner" received as an exhibit, as well as two other exhibits consisting of a copy of the contract and one letter. The defense in the main is the testimony of the two witnesses above referred to, namely Mr. Wood, the "Chief Plumbing Inspector for the County of Los Angeles" and Mr. Smoot, the "Plumbing Inspector, City of Los Angeles." Each had been a "master and journeyman plumber" for 12 or 15 years before becoming public employees.

Referring to the device manufactured by plaintiff, Mr. Wood testified as follows:

"Q. By Mr. Greenberg: Assuming, Mr. Wood, that one of these drain cleaners was used, what would you—in your occupation if you found this in use, what would you do?

"A. I would have—— Mr. Stockman: To which we object as being immaterial and assuming a fact not in evidence, and it is immaterial what he would do.

"The Court: Overruled. A. I would order it removed.

"Q. By Mr. Greenberg: Why? A. Because it is a violation of our Plumbing Code.

"Q. In what way does it violate the Plumbing Code?

"Mr. Stockman: We object to that as calling for hearsay, your Honor.

"The Court: Overruled.

"Mr. Greenberg: Answer the question. A. The installation of this device in a plumbing system, under certain circumstances, could cause the domestic water to become polluted."

And on the same subject, Mr. Smoot testified to the following:

"Q. I show you what purports to be a Universal Drain Cleaner. If you found one end of this type—the small end in the drain and the large end over the hot water faucet, in your official capacity, what would you do? A. Mr. Stockman: To which we object as being immaterial, your Honor.

"The Court: Overruled. A. I would order it removed.

"Q. By Mr. Greenberg: Why? A. Because there is a possibility of polluting the domestic water supply.

"Q. In what manner? A. On a variance of pressure. It is supposed to build up a high pressure in a wasteline, and while there is a low pressure in the water supply line causing a back flow condition, and causing water, polluted water, to enter into the drinking water and stand there, and then when the water is turned on again, people would drink it, and it could cause diarrhea, polio or various other diseases."

Mr. Wood further testified:

"A. The installation of this device in a plumbing system, *under certain circumstances,* could cause the domestic water to become polluted.

"Q. And such pollution would result in what? A. Well, it *may* or *may not* result in sickness.

"Q. By 'pollution' just what do you mean, that it would cause a suction, or draw back water? A. If conditions were right, and the pressure in the domestic supply system was lower than the pressure in the drain, the sewage would then flow into the waterlines and be distributed to other sources." (Italics added.)

Mr. Smoot further testified in part as follows:

"The Court: Did you see this diagram drawn on the blackboard by Mr. Wood? A. Yes, sir.

"Q. If you were illustrating his point, would you illustrate it in the same manner? A. Yes, sir, only I would make it a little more clear. I think it is a little bit hard for the layman that don't understand how it can be done.

"The Court: All right. I am a layman.

"A. I want to make it clear. Here is your wall in here, like this, and in that, and on the back of that, hanging up against the wall, would be a sink, and then those traps down here," etc., continuing with a description with reference to a diagram which includes the following statement, "Now, what you do with this apparatus here, you tie this, and this thing together, and by doing that, if this thing is stopped up, *solid,* you have a plug in there like that (indicating)." (Emphasis added.) Mr. Smoot further testified:

"The Court: Would it go into any other house?

"A. Yes, it could, if you had a break in the street, in your waterline, or if the pressure was low in the street, coming from the main, it could go to the next door neighbor. We have known it to take in a whole community.

"One of the greatest epidemics we had, dysentery in Chicago in 1931, the Congress Hotel, and the Auditorium there, we had an epidemic that swept the nation here, somewhere around 100 deaths, and 1500 cases, and that brought that to the municipalities throughout the country more than any other case. It is really a study. All of us have to study it now, to be able to understand it." The witness gave considerable medical testimony usually limited to those skilled in the subject of medicine.

Appellant's contentions are entitled to be upheld in every particular.

■ It should be noted at the outset, neither a city nor a county ordinance to which the sale or use of the article in question relates was alleged in the answer or proved at the trial. No citation of authority is necessary to support the proposition that such ordinances when relied upon must be alleged and proved. All references in the evidence relating to ordinances therefore must be disregarded.

■ The only evidence in the record properly admitted was one of the "Universal Drain Cleaners," received as an exhibit. The contract was admitted in the pleadings and the purpose for which the article was manufactured and the manner of its use were not disputed. The two plumbing inspectors did not qualify as experts either as physicists, chemists, doctors or engineers; their testimony quoted above as to what they would do if they found one of the articles in use was immaterial, and in other respects their testimony was somewhat if not entirely visionary. And in particular, what a plumbing inspector would do in the circumstances, is not the test as to the validity of the contract.

The only law properly to be considered in the circumstances is the law relating to contracts in general. No provision of the codes of California prohibiting the use of the article in question has been cited nor does an examination thereof reveal such a provision.

■ The following is quoted from respondent's brief:

"Section 1303, of the Uniform Plumbing Code, adopted by the Western Plumbing Officials Association, reads as follows:

"'No plumbing fixture, device or construction shall be

installed or maintained or shall be connected to any water supply when such installation or connection may provide a *possibility* of polluting such water supply or may provide a cross-connection between a distributing system of water for drinking and domestic purposes and water which may become contaminated by such plumbing fixtures, device or construction.' '' (Italics added.)

It may be considered only as an argument for otherwise it is out of place in the brief. Manifestly, any association may adopt a ''code'' but the only code that constitutes the law is a code adopted by the people through the medium of their legislatures. The Plumbing Officials Association is purely private and in no sense represents the people. As a statute adopted by the Legislature such a provision, which necessarily would come under the head of a police power regulation, would be void for indefiniteness and uncertainty, for anything in the circumstances is ''*possible*.'' The above mentioned ''Western Plumbing Officials'' code probably contemplates some permanent or semipermanent connection.

It is evident from an examination of the record that the use of the device here considered might give cause for concern, if at all, only if the stoppage in the sink drain is complete, but the likelihood of such an incident can easily be avoided by simple instructions. If the stoppage is only partial obviously its use would be harmless. In any event the disasters and calamities which appear to be so greatly feared by the witnesses referred to above are remote, if indeed they are likely to occur at all. The device is inexpensive and the right of home owners to practice thrift and economy by its use cannot be denied on the grounds urged by respondent. If the stoppage in the drain from the kitchen sink is complete, there is ample time to send for the plumber and the plumber's helper.

The contract in question is valid, the answer does not allege a valid defense, the evidence does not support the findings in any respect, and the sale or use of the device in question was not shown to be unlawful.

For the foregoing reasons, the judgment is reversed and cause remanded with directions to enter judgment for plaintiff.

A petition for a rehearing was denied March 21, 1949.