**222 P.2d 994**

### THRIFT HARDWARE & SUPPLY CO. v. CITY OF PHOENIX et al.

No. 5211.

Supreme Court of Arizona.

Oct. 17, 1950.

Terrance A. Carson and Morris L. Gerst,
Phoenix, for appellant.

Jack Choisser and George M. Sterling, Phoenix, for appellees.

DE CONCINI, Justice.

Thrift Hardware Company, appellant, hereinafter referred to as plaintiff, brought an action against the City of Phoenix and its plumbing inspector to enjoin the enforcement of certain portions of the city plumbing ordinance, which it deemed detrimental to its interests. The appellee, hereinafter referred to as the City, by and through its plumbing inspector refused the installation of certain plumbing fixtures sold by plaintiff because they were in violation of the city plumbing ordinance.

The plaintiff is engaged in the selling of plumbing fixtures manufactured by others and two plumbing fixtures, namely, concrete laundry trays and concrete water closet tanks, manufactured by itself. The fixtures that plaintiff sells and which it does not manufacture are of two kinds: new, known to the trade as "A grade", and new, but imperfect plumbing fixtures, known to the trade as "B Grade"; the latter sells at a discount from the price of "A" grade fixtures of about 40 to 50 per cent. It is with these "B Grade" fixtures that we are first concerned. The plaintiff alleged generally in its complaint that the plumbing ordinance was unconstitutional for a number of reasons and that the enforcement thereof of portions that might be constitutional were enforced in an arbitrary and discriminatory manner, that such practices amounted to monopolistic tendencies and oppressive burdens against it, and not in the interest of the public health.

Plaintiff's assignment of error No. 1, that the judgment is contrary to law, is based on specific reasons and several propositions of law. Plaintiff contends that the city plumbing Ordinance is unconstitutional in several parts for as many reasons (a) Sec. 2843 of said ordinance is ambiguous, arbitrary and discriminatory, (b) Sec. 2832 is indefinite, not related to public health, arbitrary and discriminatory and conflicts with state regulations on fraud, (c) the city's prohibition of concrete water tanks is arbitrary and discriminatory, and (d) that testimony of defendant's witnesses, who were not competent as experts, should have been stricken.

Plaintiff's assignment of errors 2, 3, 4, 5 and 6 need not be considered in disposing of this appeal.

Assignment of error No. 7 was that the court refused to grant an injunction against the city in the enforcement of subhead (k) Sec. 2835.

(a) The pertinent portion of Sec. 2843 of the Phoenix Plumbing Ordinance complained of is as follows: "Service Discontinued During Defective Plumbing:— Whenever the Plumbing Inspector shall discover that any of the provisions of this Ordinance are being violated by any person, firm or corporation by means of defective or broken plumbing fixtures * * * all water furnished by the City of Phoenix

and used by said violator of this ordinance, and upon the premises upon which said violation occurs, will be turned off * * *."

The plumbing inspector testified that he would refuse permission to install any plumbing fixture with a slight blemish, such as a pin point chip of the enamel in the bowl of the fixture, on the ground that it was in violation of the plumbing ordinance and it would impair the public health. The evidence does not sustain such a contention. The plumbing inspector would have a right to refuse such a permit if the fixtures were broken or defective to the extent that the defects would impair the operating efficiency thereof. If a fixture has defects that cause it to leak or drain improperly, it can readily be seen that such plumbing would not be sanitary; but if its defects do not impair·the use for which it was designed, such a fixture should not be prohibited.

In City of Tucson v. Stewart, 45 Ariz. 36, 40 P.2d 72, 75, 96 A.L.R. 1492, this court said:

"* * * If such regulations definitely and certainly define the duties and obligations of the persons therein authorized to install electrical wiring, and are reasonable and not monopolistic or oppressive, they are a proper exercise of the city's police power."

"* * * Regulatory ordinances must be definite and certain. The reason therefore is stated in 19 Ruling Case Law 819, § 114,

as follows: 'An ordinance of a regulatory nature must be clear, certain and definite, so that the average man may with due care after reading the same understand whether he will incur a penalty for his actions or not. Otherwise it is void for uncertainty.' * * *"

In that case the court held that the words "approved methods" in regard to work done by electrical contractors was too indefinite and uncertain and "suggests conflict for an administrative officer of the city to reconcile."

In the instant case the words "defective or broken plumbing fixtures" may at first blush appear devoid of conflicts, but on a closer analysis, in view of the evidence in this case, it is clear that "defects" which do not impair the operating efficiency of the plumbing fixtures are not such defects which would be properly prohibited by the statute. Therefore, the words standing by themselves are indefinite and uncertain as applied to plumbing fixtures that would not endanger the public health. Their strict application would render monopolistic and oppressive practice against those who sell or would care to use "B" grade plumbing fixtures.

(b) Appellant next contends that part (1) of Sec. 2832 as follows: "Each length of pipe, fitting, trap, fixture and device used in a pumping or drainage system shall be stamped or indelibly marked with the weight or quality thereof and the maker's

mark or name", is void because it does not relate to public health, is a direct interference with interstate commerce and trade and has no relation to police power.

Plaintiff does not contend that the city cannot exercise its police power in the interest of public health, but rather that the marking of the quality and manufacturer's name on the product has no relation to these things.

The City plumbing inspector testified as follows:

"Q. You are familiar with all the manufacturers of fixtures, are you not? A. No, sir.

"Q. Are not their names set forth in WW–P–542? A. No, sir.

"Q. They are not? What does the maker's name mean to you when you see it on a fixture? Does it mean anything to you? A. No.

"Q. You are unable to say in what respect it affects the public health either? A. That is right."

■ While it is true from that evidence the city inspector did not know the meaning of the manufacturer's mark, nor in what manner it affected the public health, yet we cannot be so naive to assume that such a reasonable requirement is not in the interest of the public health. It may be that some future plumbing inspector will know the reason for such markings. It is apparent to this court that certain standards of quality in plumbing fixtures is a reasonable demand in the interest of the public health. A certain required weight of metal in drain traps is a necessary regulation, so also is a certain strength in pipes to withhold reasonable water pressures. The provision of part 1—Sec. 2832 of the City Ordinance quoted herein is a reasonable regulation of plumbing installations in the interest of the public health.

■ Plaintiff next contends that the city's requirement that the fixtures be labelled at the factory is unreasonable and has no relation to public health; and, furthermore, the undisputed evidence was that the city does not enforce the ordinance uniformly against all retail stores in Phoenix but allows some of them to label the fixtures with their own brand while refusing that privilege to the plaintiff. Such discriminatory practice has no place in the law and the city should cease it at once. All dealers in plumbing fixtures should be treated in the same manner under the plumbing code.

Plaintiff relies heavily upon the case of Direct Plumbing Supply Co. v. City of Dayton, 138 Ohio St. 540, 38 N.E.2d 70, 137 A. L.R. 1058. In that case the City of Dayton passed an ordinance which required purchasers of plumbing fixtures, new or used, to disclose their names and addresses, intended use such as resale, place of installation, etc.; and required sellers to label with stickers obtained from the plumbing inspector, register their use with him, etc. The court held it unconstitutional because

26

it imposed unduly oppressive burdens on individuals with no corresponding benefit to the public health. The court recognized the right of cities to enact ordinances regarding plumbing fixtures and installations thereof where public health is involved but stopped short of going any further. The City of Dayton already had two ordinances on the matter, the first required plumbing permits, the second, that installation must be done by licensed plumbers. It held, therefore, that anything over and above that which pertained to the public health was void and unconstitutional. In the instant case it is apparent that the city was concerned with the public health in adopting the ordinance. The question here is more one of interpretation of the ordinance (Sec. 2843, supra) and the arbitrary enforcement of other sections by the plumbing inspector. The city must confine itself to the reasonableness of its regulations and a fair rather than an arbitrary and discriminatory enforcement thereof. See Reasonableness of police regulations, 11 Am.Jur., Constitutional Law, Secs. 302–5, pages 1073–5.

■■■ (c) The next contention of plaintiff is that the city's refusal to allow concrete water tanks for toilets to be installed was arbitrary and discriminatory. The city ordinance permits only "china" tanks to be installed. The reason advanced is that the water may become contaminated through outside sources and in some instances the water may again find its way into the supply lines; that concrete tanks are more susceptible as a germ breeding place than china tanks. The evidence does not sustain the city's position. If it is true that water in the tanks may become contaminated and flow into the supply lines, then a plumbing device of some sort should be installed to prevent the occurrence. Contaminated water has no place in a supply line, no matter what kind of a tank it comes from.

The judgment is reversed and the city should be enjoined from refusing to permit installation of any plumbing fixture which meets the requirements of quality, markings and whose defects, if any, do not impair the operating efficiency thereof. Furthermore, the city should be enjoined from (a) discriminatory practices in regard to labeling fixtures; (b) from refusing to permit the installation of concrete water tanks solely because they are made of concrete; (c) from enforcing subpar. (k), Sec. 2835 of the plumbing ordinance, which was found unconstitutional by the trial court.

In view of the foregoing it is unnecessary to pass on plaintiff's other assignments of error.

Judgment reversed and cause remanded for further proceedings in accordance with the foregoing.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.