[Civ. No. 21679. Second Dist., Div. Three. Dec. 21, 1956.]

R. W. AGNEW, Plaintiff and Appellant, v. CITY OF CULVER CITY et al., Defendants and Appellants.

146

R. W. Agnew, in pro. per., for Plaintiff and Appellant.

M. Tellefson, City Attorney, for Defendants and Appellants.

Roger Arnebergh, City Attorney (Los Angeles), Bourke Jones and James A. Doherty, Assistant City Attorneys, as Amici Curiae on behalf of Defendants and Appellants.

VALLÉE, J.—Plaintiff brought this suit for declaratory relief to determine the validity of Ordinance Number 49, as amended by Ordinance Number 250, of the city of Culver City providing for licensing and regulating electrical contractors and fixing fees to be charged electrical contractors as a condition precedent to engaging in electrical contracting in Culver City and to determine the validity of certain provisions of Ordinance Number 170 of Culver City, as amended by Ordinance Number 230, providing for examinations before the issuance of electrical permits to do wiring, and prescribing methods and material for electrical installations. Plaintiff also

sought to have defendants restrained from enforcing certain provisions of the ordinances insofar as they relate to electrical contractors, for damages for refusing to permit him to engage in electrical contracting in Culver City, and for a declaration of his rights.

Plaintiff is an electrical contractor licensed by the Contractors' State License Board under sections 7000 et seq. of the Business and Professions Code. Defendant city of Culver City is a municipal corporation. Defendant Turton is the electrical inspector of the city and defendant Loretta is the chief of the building department.

Plaintiff applied to the proper official for a permit authorizing him to do electrical work within Culver City at a designated address. He was informed it would be necessary for him to pay a license fee of $100 under Ordinance 49 and to obtain from the business license collector a business license to do work as an electrical contractor in the city. Plaintiff refused to pay the fee and to obtain the license on the ground his state license as an electrical contractor authorized him to do work as such in Culver City without conforming to any local ordinances requiring a license or the payment of a fee.

The court found: 1. Plaintiff is authorized to work as an electrical contractor anywhere in the state, subject to the provisions of any local ordinance not in conflict with the Business and Professions Code. 2. Ordinance 49, as amended by Ordinance 250, providing for the enforcement of the provisions of the ordinance by criminal process, imposes an additional burden on plaintiff in carrying on his work as a licensed electrical contractor not contemplated by the State Contractors' License Law, and is in conflict therewith. 3. Ordinance 230, amending Ordinance 170, creating the office of electrical inspector and fixing his powers and duties and regulating installation of electrical equipment, etc., is an ordinance adopted by the city council under its police power, relating to the quality, safety, and character of electrical installations, and is not in conflict with the State Contractors' License Law and does not illegally interfere with the right of plaintiff to carry on his business as an electrical contractor within Culver City.

The judgment declared: 1. Ordinance 49, as amended by Ordinance 250, is invalid and unenforceable against plaintiff insofar as it provides for the enforcement of the provisions of the ordinance by criminal process. 2. Ordinance 230 was a valid and existing ordinance at the time of trial of the

action, except to the extent section 4(d) applies to plaintiff. 3. Plaintiff take nothing by way of damages.

Defendants appeal from the judgment as a whole. Plaintiff appeals from that part of the judgment declaring that Ordinance 170, as amended by 230, was a valid ordinance "except that to the extent Sec. 4(d) applies to the plaintiff" and insofar as it denies him damages.

## Appeal of Defendants

While defendants appealed from the judgment in its entirety, the only point urged is that Ordinance 49, as amended by Ordinance 250, is not invalid and unenforceable against plaintiff insofar as it provides for the enforcement of its provisions by criminal process.

Ordinance 49, as amended by Ordinance 250, makes it unlawful for any person to commence or carry on any business specified in the ordinance without first having paid the required license fee and having procured a license certificate so to do from the city and without obtaining the permit, certificate of compliance, or other instrument required by the ordinance. The license fee required was $50 a year or part thereof from *local* and $100 a year or part thereof from *itinerant* electricians and electrical contractors.[1] The amount of the license fee is made a debt to Culver City. Violation of any provision of the ordinance is a misdemeanor. On payment of the required fee it is made the duty of the license collector to issue a license certificate. A permit from the city council to carry on the occupation is required.[2]

---

[1] By Ordinance Number 250, enacted January 3, 1955, the fees were reduced to $36 for local and $60 for itinerant electricians and electrical contractors.

Section 41.02 in part provides: "It is hereby made the responsibility of every general building contractor, under this Ordinance, to require subcontractors under his control or direction to obtain a business license as herein provided before permitting said sub-contractor to perform services for said general building contractor."

[2] Section 11.01 reads: "It shall be unlawful for any person, whether as principal or agent, clerk or employee, either for himself or for any other person, or for any body corporate, or as an officer of any corporation, or otherwise, to commence or carry on in the City of Culver City any business specified in this ordinance and as herein defined, without first having paid the required license fee and having procured a license certificate from said City so to do and without complying with all other applicable regulatory ordinances now existing or hereafter adopted by the City Council, and without obtaining the permit, certificate of compliance, or other instrument required under the provisions of this ordinance, and complying with all regulations covering such business herein contained; and the carrying on of any business not specifically exempted by law without first having complied with the provisions of this ordinance, shall constitute a separate violation thereof for each and every day that such business is so carried on."

Defendants contend the imposition of contractors' license fees is not for regulation but for revenue purposes; that it does not add any regulatory burden on plaintiff to what is already required by state law; and that the penalty is applied for violation of the ordinance in failing to pay the license fee.

The same contention was made in *Agnew* v. *City of Los Angeles,* 110 Cal.App.2d 612 [243 P.2d 73]. In that case the superior court granted an injunction against the enforcement of provisions of the electrical code of Los Angeles requiring payment of a permit service fee of $100 and the posting of a $1,000 bond by electrical contractors. In affirming the judgment we held: 1. The provision of article XI, section 11, of the Constitution declaring that ''Any . . . city . . . may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws,'' is a limitation on the power of municipalities, from whatever source the power is derived. 2. A local ordinance is in conflict with general law if the general law occupies the entire field, leaving no room for local regulations. 3. It was the intention of the Legislature to declare that licensing and regulation of contractors by the state shall be the only licensing and regulation in the state. 4. The licensing of contractors throughout the state is a matter of general and state-wide concern, and is not a municipal affair which concerns only the inhabitants of a chartered city and which is subject to local regulation. 5. The state, by the enactment of the Contractors License Act (Bus. & Prof. Code, § 7000 et seq.), has adopted a broad and comprehensive plan for licensing contractors throughout the state, and such general law has fully occupied the field to the exclusion of municipal regulation thereon other than for revenue only and for the enforcement of local regulations as to the quality and character of electrical installations. 6. A state license implies permission to the licensee to conduct his business at any place in the state, and this permission should not be circumscribed by local authorities; a city ordinance is invalid if it attempts to impose additional requirements. 7. The challenged provisions of the ordinance were invalid as an attempt to provide a means by which a contractor with a state license may be denied the right to contract or work in the city, and as being in direct conflict with the general state law, which is complete in itself; it nullified the permission given a contractor by the general law to conduct his business at any

150

place in the state. (See *In re Porterfield,* 28 Cal.2d 91, 116 [168 P.2d 706, 167 A.L.R. 675].)

*Lynch* v. *City of Los Angeles,* 114 Cal.App.2d 115 [249 P.2d 856], says (p. 119) :

''To finally sum up the matter in its legal aspect, appellants' argument tends to give first place to municipal regulatory powers and subjects state control to municipal limitation. This theory of operation is directly contrary to the well established rule, and should not be sanctioned either under so-called police power or otherwise. Nor should a contractor who has been duly licensed by the state be placed in such a confused and·burdensome position.''

Notwithstanding the state law which. authorizes an electrical contractor holding a state license to contract anywhere in the state, Ordinance 49, as amended by Ordinance 250, limits his right to contract in Culver City unless he pays the city the prescribed fee and obtains a permit from the city. The provisions of the ordinance do not come within the category mentioned in *Horwith* v. *City of Fresno,* 74 Cal.App. 2d 443 [168 P.2d 767]—regulations as to the quality and character of installations. They attempt to provide the means by which an electrical contractor with a state license may be denied the right to contract or work in Culver City.

The general law is complete in itself. It is not simply prohibitory. It is also permissive. It authorizes contractors licensed by the board to engage in their occupations anywhere in the state. The requirement for the payment of a fee and the obtaining of a permit nullifies the permission given a contractor by the general law to conduct his business at any place in the state. A municipality may not impose a more stringent or additional requirement than imposed by the general law. It clearly appears that the general law and the challenged provisions of Ordinance 49, as amended by Ordinance 250,—the one permitting, the other prohibiting, the same act, except on more onerous terms—are in direct conflict with each other.

Ordinance 49, as amended by Ordinance 250, does what *Horwith* v. *City of Fresno,* 74 Cal.App.2d 443 [168 P.2d 767], *City & County of San Francisco* v. *Boss,* 83 Cal.App.2d 445 [189 P.2d 32], *Collins* v. *Priest,* 95 Cal.App.2d 179 [212 P.2d 269], *Agnew* v. *City of Los Angeles,* 110 Cal.App.2d 612 [243 P.2d 73], and *Lynch* v. *City of Los Angeles,* 114 Cal. App.2d 115 [249 P.2d 856], say cannot be done. The provisions of the ordinance relating to state licensed electrical contractors are invalid.

## Appeal of Plaintiff

Plaintiff first asserts the court erred in not permitting him to introduce evidence for the purpose of establishing his damage sustained by reason of the refusal of Culver City to allow him to operate therein as an electrical contractor. ■ The charter of Culver City, of which we take judicial notice (*Thompson* v. *City of Los Angeles*, 82 Cal.App.2d 45, 47 [185 P.2d 393]), provides that no suit shall be brought on any claim for damages against the city or any officer thereof until a verified demand for the same has been presented within 90 days after the occurrence from which the damages allegedly arose and the claim has been rejected. (Stat. 1947, ch. 24, pp. 3386, 3406.) ■ The complaint is barren of any allegation that plaintiff complied with the charter provision and no offer to prove that he had done so was made. Such an allegation and proof are prerequisites to the reception of evidence of damage. (*Wiersma* v. *City of Long Beach*, 41 Cal.App.2d 8, 12 [106 P.2d 45].)

The court adjudged that Ordinance 170, as amended by Ordinance 230, is valid except to the extent section 4(d) applies to plaintiff.[3] Plaintiff's second assignment of error is that the trial court erred in holding that all sections, except section 4(d) of Ordinance 170, as amended by Ordinance 230, are valid.

The ordinance creates the office of electrical inspector, fixes his powers and duties, establishes some standards for electrical equipment and its installation, makes it unlawful to undertake the installation of electrical equipment without a permit, provides for the collection of an inspection fee, reinspection, the issuance of certificates, and that any person "who shall violate any of the provisions of this ordinance, or who shall fail to comply with the same, shall be guilty of a misdemeanor."

Plaintiff challenges the validity of sections of the ordinance which empower the electrical inspector to make his own rules "as to motive or method or manner in which material shall

---

[3]Section 4(d) reads: "EXAMINATIONS: No person, as principal, agent, manager or employee shall conduct, manager [sic], or carry on the trade of a journeyman electrician or a maintenance electrician or do any electrical work or any kind of distribution with the City for which an electrical permit is required without first having submitted through practical examination before, and obtaining from, the Building Department of the City, a certificate of competency showing such person to have sufficient practical experience and sufficient knowledge to do electrical work."

be installed'' (§ 4(c));[4] provide that electrical installations shall be in conformity with the ordinance, the electrical safety orders of the state, and with approved standards for safety to life and property, and that where no specific type or class of material, or no specific standards are prescribed by the ordinance or by the electrical safety orders of the state of California, conformity with the regulations as laid down in the National Electrical Code, as approved by the American Standards Association, shall be prima facie evidence of conformity with approved standards for safety to life and property (§ 5(a));[5] provide standards similar to those provided in section 5(a) for electrical materials and that listing or labeling in conformity to the standards of Underwriters' Laboratories, Inc., as approved by the United States Bureau of Mines, the American Standards Association, the United States Bureau of Standards, or other similar institutions of recognized standing, shall be prima facie evidence of conformity with approved standards for safety to life and property (§ 5(b));[6] provide that equipment conduits and fittings installed on the exterior of any building shall be listed and approved by a recognized testing laboratory as raintight (§ 9(a));[7] provide that certain grounds shall be installed as

[4]Section 4(c) reads: ''In cases where the rapid development in the application and uses of electricity or new and special or unusual methods of building construction, create problems or conditions which are not clearly contemplated in the making of this Ordinance and make literal application of the rule or rules impracticable, the Electrical Inspector is hereby empowered to make interpretations in the form of his own rules wherever there is a question as to motive or method or manner in which material shall be installed.''

[5]Section 5(a) reads: ''Installation: All electrical installations (industrial, commercial and residential) in the City of Culver City shal[1] be in conformity with the provisions of this ordinance, the Electrical Safety Orders of the State of California, and with approved standards for safety to life and property. In every case where no specific type or class of material, or no specific standards of installation are prescribed by the Electrical Safety Orders or by this Ordinance, conformity with the regulations as laid down in the National Electrical Code, as approved by the American Standards Association, shall be prima facie evidence of conformity with approved standards for safety to life and property.''

[6]Section 5(b) reads: ''Materials: All electrical materials, devices, appliances, fittings and equipment installed or used in the above described territory shall be in conformity with the provisions of this Ordinance, the Electrical Safety Orders of the State of California, and with approved standards for safety to life and property. Listing or labeling as conforming to the standards of Underwriters' Laboratories, Inc., as approved by the United States Bureau of Mines, the American Standards Association, the United States Bureau of Standards, or other similar institutions of recognized standing, shall be prima facie evidence of conformity with approved standards for safety to life and property.''

[7]Section 9(a) reads: ''METHOD OF INSTALLATION OF SERVICE: Every service shall be installed in rigid metal raceway and in accordance with

required by the National Electrical Code, and that metering equipment be installed as required by the Electrical Serving Utility (§ 9(e)) ;[8] provide that certain fixtures shall be provided with a fixed nameplate stating the manufacturer's name, and that such fixtures shall have Underwriters' Laboratory label or recognized testing laboratory label (§ 21).[9]

Legislation for the purpose of controlling the character and quality of electrical installations and for inspection of the same is without question a valid exercise of the police power. (*Agnew* v. *City of Los Angeles,* 110 Cal.App.2d 612, 616 [243 P.2d 73] ; *Horwith* v. *City of Fresno,* 74 Cal.App.2d 443, 448-449 [168 P.2d 767].) The question on plaintiff's appeal is not one of the power of Culver City to regulate the character and quality of electrical installations, but whether the regulatory provisions are in conformity with well recognized rules and principles of law.

A municipal legislative body has no power to delegate to an administrative board or officer its exclusive power and function of determining what acts or omissions on the part of an individual are unlawful. The distinction between the legislative and administrative function must be recognized and enforced. (*In re McLain,* 190 Cal. 376, 379, 381 [212 P. 620].)

A delegation by a municipality of a power giving an administrative officer uncontrolled discretion constitutes a delegation of legislative power. (*Northern Boiler Co.* v. *David,* 157 Ohio St. 564 [106 N.E.2d 620, 623].)

Ordinances, to be valid and effectual, must set forth with clarity some norm or standard by which all persons may know their rights and obligations thereunder. Where

---

rules provided for herein, and all service equipment conduits and fittings installed on the exterior of any building shall be listed and approved by a recognized testing laboratory as raintight.''

[8]Section 9(e) reads: ''Service Grounding: Three (3) phase service grounds shall be rigid metal conduit or rigid galvanized pipe. Commercial and industrial single phase service grounds shall be protected by rigid metal conduit. Multi-Family dwelling service grounds shall be protected by a rigid metal raceway. One (1) and two (2) family service grounds may be armour protected grounds or open type grounds installed as required by the National Electrical Code. (Note: Install metering equipment as required by the Electrical Serving Utility.) ''

[9]Section 21 reads: ''GASEOUS TUBE LIGHTS: Each fluorescent fixture, mercury vapor fixture or high voltage gas tube light or sign shall be provided with a fixed nameplate, legible after installation, which shall state correctly the manufacturer's name or trade mark, and the voltage, amperage, total watts and power factor. No such equipment shall be installed in which the power factor is less than ninety (90) per cent. All above listed equipment shall have Underwriters' Laboratory Label or recognized testing laboratory label. . . .''

an ordinance commits its application to municipal officials it should set up a uniform standard or rule of conduct. (*Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468, 484 [238 P. 703].) Regulations prescribed by ordinance must be clear, definite, and specific in their application and operation, and their application may not be left to the caprice of enforcement officers. (*Hewitt* v. *State Board of Medical Examiners,* 148 Cal. 590 [84 P. 39, 113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A.N.S. 896] ; *In re Peppers,* 189 Cal. 682, 685-689 [209 P. 896] ; *In re Porterfield,* 28 Cal.2d 91, 110-112 [168 P.2d 706, 167 A.L.R. 675] ; *People* v. *Young,* 136 Cal.App. 699, 702 [29 P.2d 440] ; *Vaughn* v. *Board of Police Commrs.,* 59 Cal.App.2d 771 [140 P.2d 130] ; *Edwards & Browne Coal Co.* v. *City of Sioux City,* 213 Iowa 1027 [240 N.W. 711] ; *Thrift Hardware & Supply Co.* v. *City of Phoenix,* 71 Ariz. 21 [222 P.2d 994, 995-996].) An attempted delegation of power to an officer of a municipality, where no standards are established by which the officer shall be governed in his actions, is in effect an attempted delegation to such officer to enact a law. A criminal statute must be so framed that those to whom it is to be administered and those who are to administer it may know what standard of conduct is intended to be required.[10]

Ordinance provisions similar to those challenged are universally condemned. The Fire Prevention Act of Kansas provided, "All electrical wiring shall be in accordance with the National Electrical Code." In *State* v. *Crawford,* 104 Kan. 141 [177 P. 360, 2 A.L.R. 880], the court said (177 P. 361) :

"But none of the cases cited has ventured so far afield as to intimate that the Legislature might delegate to some unofficial organization of private persons like the National Fire Protective Association the power to promulgate rules for the government of the people of this state, or for the management of their property, or that the Legislature might prescribe punishment for breaches of these rules. We feel certain that

---

[10]*Musser* v. *Utah,* 333 U.S. 95, 97 [68 S.Ct. 397, 92 L.Ed. 562]; *Winters* v. *New York,* 333 U.S. 507 [68 S.Ct. 665, 92 L.Ed. 840]; *Cline* v. *Frink Dairy Co.,* 274 U.S. 445 [47 S.Ct. 681, 71 L.Ed. 1146]; *Connally* v. *General Const. Co.,* 269 U.S. 385 [46 S.Ct. 126, 70 L.Ed. 322]; *Champlin Refining Co.* v. *Corporation Com.,* 286 U.S. 210 [52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403]; *Stromberg* v. *California,* 283 U.S. 359 [51 S.Ct. 532, 75 L.Ed. 1117, 73 A.L.R. 1484]; *United States* v. *Cohen Grocery Co.,* 255 U.S. 81, 89 [41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045]; *Small Co.* v. *American Sugar Refining Co.,* 267 U.S. 233, 239 [45 S.Ct. 295, 69 L.Ed. 589]; *Smith* v. *Cahoon,* 283 U.S. 553, 564 [51 S.Ct. 582, 75 L.Ed. 1264].

no such judicial doctrine has ever been announced. If assent to such a doctrine could be given, a situation would arise where owners of property with considerable persistence might learn what these Code rules were, and incur the expense of making their property conform thereto, only to find that the National Fire Protective Association had reconvened in Chicago, New York, or New Orleans, and had revised the Code, and that the work and expense had to be undertaken anew. And there would be no end of such a state of affairs. Furthermore, there is no official way, indeed no practical way, for the average property owner to know what these Code rules are. The laws of this state to which our people owe obedience must be officially published. The people may learn what these laws are, and they are privileged to meet legislative committees and petition the Legislature for amendment, improvement, and amelioration of the laws. Shall it be intimated that if these fire prevention regulations, these 'National Electrical Code' rules are oppressive, or otherwise objectionable, the property owners of this state must be referred to some voluntary and unofficial conference of underwriters and electricians which occasionally meets here, there, or anywhere in North America for redress of grievances. But the fallacy of such legislation in a free, enlightened, and constitutionally governed state is so obvious that elaborate illustration or discussion of its infirmities is unnecessary. If the Legislature desires to adopt a rule of the National Electrical Code as a law of this state, it should copy that rule, and give it a title and an enacting clause, and pass it through the Senate and the House of Representatives by a constitutional majority, and give the Governor a chance to approve or veto it, and then hand it over to the secretary of state for publication.

"The clause . . . requiring that 'all electric wiring shall be in accordance with the National Electrical Code,' is void for uncertainty. . . ." (See *Columbia Specialty Co.* v. *Breman,* 90 Cal.App.2d 372, 377-378 [202 P.2d 1034].)

In *City of Tucson* v. *Stewart,* 45 Ariz. 36 [40 P.2d 72, 96 A.L.R. 1492], the court considered an ordinance which provided that the city electrician could refuse to give his approval of electrical installations if they did not comply with "approved methods of construction for safety to life and property" and that "[t]he regulations contained in the present National Electrical Code, and subsequent editions thereof, and in the present National Electrical Safety Code,

and subsequent sections thereof, shall be prima facie evidence of such approved methods, provided that the Electrical Code of the City of Tucson shall govern in all cases where there are conflicting provisions.'' The court said (40 P.2d 80):

''The contractor or supervising electrician might have one opinion as to the *approved methods,* and the city electrician, who is given final say as to whether the construction conforms with the approved methods, another and entirely different opinion. The fact that the ordinance provides that in determining the approved methods the regulations of the present National Electrical Code and the present National Electrical Safety Code and subsequent editions thereof may be taken as prima facie evidence of such methods, but that in case of conflict the electrical code of the City of Tucson shall govern, does not lend clarity, certainty, or definiteness to the regulations, but rather suggests conflicts for an administrative officer of the city to reconcile.''

The court held that requiring conformity in construction to be in accordance with the regulations of some private association was delegating the legislative body's power to make the city's laws, and that the ordinance was void.

In *Cawley* v. *Northern Waste Co.,* 239 Mass. 540 [132 N.E. 365], sections of a municipal ordinance provided that an owner could not connect electricity with any system of wiring for light or power without a written permit of the inspector of wires and forbade that officer to issue such permit unless ''the established rules and regulations of the National Board of Fire Underwriters'' should have been complied with. The sections were held void.

Every man should be able to know with certainty when he is committing a crime. (*In re Peppers,* 189 Cal. 682, 686 [209 P. 896].)

Measured by these principles, it is apparent that sections 4(c), 5(a), 5(b), 9(a), 9(e), and that part of section 21 reading ''All above listed equipment shall have Underwriters' Laboratory Label or recognized testing laboratory label'' of Ordinance 170, as amended by Ordinance 230, are invalid. They constitute an unlawful delegation of power. They are vague, indefinite, and uncertain. They leave it entirely to the opinion of the persons who formulate the National Electrical Code, to various private and public bodies, and to the license inspector to determine the law governing the character and quality of various electrical installations, and confer on them the power to create an offense to which

criminal sanctions are attached. The regulations can be changed at any time at the will of such parties and at the whim of the license inspector, whoever he might be. They fix no ascertainable standard whereby an electrical contractor may be governed.

Plaintiff also challenges the validity of sections of the ordinance which provide for use of used material with the approval of the electrical inspector (§ 5(c)) ;[11] require that the maker's identification symbol shall be placed on all electrical equipment (§ 5(d)) ;[12] provide that no two-wire service shall be connected to a three-wire service without the written approval in advance of the electrical inspector (§ 9(b)) ;[13] provide that disconnecting means shall be of a type approved for service equipment and for prevailing conditions (§ 9(g)) ;[14] provide that no deviation may be made from the installation described in the permit without the written approval of the electrical inspector (§ 23(d)).[15]

---

[11]Section 5(c) reads: ''Used Materials: Previously used materials shall not be re-used without the written approval obtained in advance from the Electrical Inspector.''

[12]Section 5(d) reads: ''Nameplate: The makers nameplate, trademark, or other identification symbol shall be placed on the outside where it is visible at time of inspection on all electrical materials, devices, appliances, fittings and equipment used or installed under the provisions of this Ordinance.''

[13]Section 9(b) reads: ''Two and Three Wire Services: All single phase lighting loads of not more than two (2) circuits may be served by two (2) wires. Three (3) circuits or more shall be served by three (3) wires. Where an installation has been wired and arranged for a three wire service, no two wire service shall be connected thereto without the written approval obtained in advance from the Electrical Inspector.''

[14]Section 9(g) reads: ''Switch and Circuit-Breaker: The disconnecting means shall be manually operable, it may consist of not more than six switches or six circuit breakers in a common enclosure, or in a group of separate enclosures, located at a readily accessible point nearest to the entrance of the conductors, either inside or outside the building wall. Two or three single pole switches or breakers capable of individual operation, may be grouped on multi-wire circuits as one multi-pole disconnect, provided they are equipped with (Handle ties). 'Handles within $\frac{1}{16}$ inch proximity' a 'master handle' or 'other means' making it practical to disconnect all conductors of the service with no more than six operations of the hand. The disconnecting means shall be of a type approved for service equipment and for prevailing conditions.''

[15]Section 23(d) reads: ''Application for such permit, describing the work to be done, shall be made in writing to the Electrical Inspector by the person, firm or corporation installing the work. The application shall be accompanied by such plans, specifications and schedules as may be necessary to determine whether the installation as described will be in conformity with the requirements of this Ordinance. If it shall be found that the installation as described will conform with all legal requirements, and if the applicant has complied with the provision of this Ordinance, a

 The legislative body of a municipality may commit to an administrative officer the power to determine whether the facts of a particular case bring it within a rule or standard previously established by the legislative body for his guidance. (*Jersey Maid Milk Products Co.* v. *Brock,* 13 Cal.2d 620, 642 [91 P.2d 577].) "It is well settled that the legislature may commit to an administrative officer the power to determine whether the facts of a particular case bring it within a rule or standard previously established by the legislature for his governance." (*Dominguez Land Corp.* v. *Daugherty,* 196 Cal. 468, 484 [238 P. 703] ; *Borum* v. *Graham,* 4 Cal.App. 2d 331, 336 [40 P.2d 866].)

*First Industrial Loan Co.* v. *Daugherty,* 26 Cal.2d 545 [159 P.2d 921], says (p. 549) :

"The Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect, and provision by the Legislature that such rules and regulations shall have the force, effect, and sanction of law does not violate the constitutional inhibition against delegating the legislative function."

"[P. 550.] A ministerial officer may not, however, under the guise of a rule or regulation vary or enlarge the terms of a legislative enactment or compel that to be done which lies without the scope of the statute and which cannot be said to be reasonably necessary or appropriate to subserving or promoting the interests and purposes of the statute."

*Gaylord* v. *City of Pasadena,* 175 Cal. 433 [166 P. 348], held that a municipal ordinance delegating to the city electrician the power of determining whether an electrical installation in a building is dangerous to life or property, without defining what conditions he must find to exist before he determines that the installation is unsafe or dangerous, was not void as unwarrantedly conferring on that officer legislative powers or because its terms were either indefinite, arbitrary, or oppressive. The court said that from the very nature and character of an electrical apparatus, it would be impossible for any ordinance to define what conditions the city electrician must find before he determined that the electrical

permit for such installation shall be issued. No deviation may be made from the installation described in the permit without the written approval of the Electrical Inspector."

apparatus was unsafe or dangerous without working in many instances the very oppression which its language, necessarily general, was designed to prevent; that it is presumed the city electrician is competent and that he will act fairly. (Also see *In re Leach,* 215 Cal. 536, 543-545 [12 P.2d 3].)

 We think sections 5(c), 9(b), and 9(g) come within these principles and that they are merely administrative regulations to promote the purposes of the legislation and to carry it into effect. They are valid. The purpose of section 5(d) and that part of section 21 relative to stating the manufacturer's name or trademark on certain materials may be to facilitate repair, replacement of parts, or fix responsibility for safety. It is apparent that certain standards of quality in electrical fixtures are reasonable demands in the interest of public safety. (*Thrift Hardware & Supply Co.* v. *City of Phoenix,* 71 Ariz. 21 [222 P.2d 994, 996].) We cannot say, as a matter of law, that those provisions are unreasonable. They are valid.

The judgment, insofar as it adjudges that Ordinance 49, as amended by Ordinance 250, is invalid and unenforceable against plaintiff insofar as it provides for the enforcement of the provisions of the ordinance by criminal process, and insofar as it adjudges that Ordinance 170, as amended by Ordinance 230, is invalid to the extent section 4(d) applies to plaintiff, is affirmed. Insofar as it adjudges that Ordinance 170, as amended by Ordinance 230, is valid in all other respects, it is reversed with directions to the superior court to amend its findings of fact and conclusions of law and render judgment in conformity with this opinion.

Shinn, P. J., and Wood (Parker), J., concurred.

Petitions for a rehearing were denied January 17, 1957, and the petitions of plaintiff and appellant and of defendants and appellants for a hearing by the Supreme Court were denied February 13, 1957.