[Civ. No. 3523. Fourth Dist. May 10, 1946.]

WILLIAM HORWITH, Appellant v. CITY OF FRESNO, et al., Respondents.

Robert M. Barnard for Appellant.

C. M. Ozias, City Attorney, for Respondents.

John J. O'Toole, City Attorney (San Francisco), Walter A. Dold, Chief Deputy City Attorney, Bernard J. Ward, Jr., Deputy City Attorney, F. B. Fernhoff, City Attorney (Oakland), Joseph C. Tobe, City Attorney (Stockton), Eugene DuPaul, City Attorney (San Diego), Irving M. Smith, City Attorney (Long Beach), Henry McClernan, City Attorney (Glendale), Archie L. Walters, City Attorney (Burbank), Carvel C. Torrence, City Attorney (Santa Monica), and Clyde Woodworth, City Attorney (Inglewood, El Segundo, South Gate and Manhattan Beach), as Amici Curiae on behalf of Respondents.

MARKS, J.—This is an appeal from a judgment dismissing the action after a demurrer to plaintiff's amended complaint had been sustained without leave to amend.

Plaintiff has a license as an electrical contractor issued by the Contractors' State License Board after he had successfully passed the examination required by that board under the provisions of sections 7000 et seq., of the Business and Professions Code.

The city of Fresno is a municipal corporation organized and existing under a city charter. An ordinance of that city requires an electrical contractor to obtain and pay for a business license before engaging in business. Plaintiff applied for such a business license which was refused because he had neglected

to pass an examination before the electrical board of examiners of the city as required by the provisions of Ordinance No. 2728. He brought this action to determine his rights and to require the issuance of a business license to him.

The issues presented by the appeal are clear. Plaintiff contends that the state has provided a comprehensive system for the examination and licensing of all contractors; that the state law has occupied the entire field so that no municipality may provide for any further examination of a contractor licensed under state authority as a prerequisite to his engaging in business within its limits. No question is presented of the right of a city to impose a license fee on such contractor for doing business in such municipality. We understand that right is conceded by the plaintiff.

On the other hand defendants maintain that the licensing of contractors doing business in the city is a municipal affair solely within the regulatory power of the municipality; that requiring a contractor to pass an examination given by a local board is a proper prerequisite to the issuance of a business license under the police powers of the city. It is also argued that "the ordinance does not, as a matter of fact, conflict with the State Contractors' Law." Counsel for defendants states his position under this contention as follows:

"The ordinance of Fresno under consideration operates to require a much higher degree of skill and competence on the part of those making electrical installations than is required under the more or less superficial state contractors' law. The state law was never designed to, and in fact does not, 'occupy the field.' "

So far as we are advised the precise question thus presented is of first impression in California.

Section 17 of Ordinance 2728 of the city of Fresno creates an Electrical Board of Examiners to examine applicants for master and journeyman electricians' certificates. Section 18 of the ordinance provides for such examinations and prohibits the issuance of certificates to applicants who do not attain a required grade. Section 14 makes it unlawful for any person to engage in the business of master electrician without first having secured a city license and prohibits the issuance of such license to any person not possessing a master electrician's certificate issued by the city electrical board of examiners.

Article 1 of division 3, chapter 9 of the Business and Professions Code provides for a Contractors' State License Board.

Article 2 of the same chapter defines those coming within the jurisdiction of the board, particularly sections 7026 and 7027. It is admitted here that the board has established the classification of electrical contractors which includes both master electricians and journeyman electricians as defined by sections 11 and 12 of Ordinance number 2728 of the city of Fresno.

Section 7028 of the Business and Professions Code prohibits any person from engaging in the business of contractor without first having obtained a state license permitting him to do so.

Article 5, division 3, chapter 9 of the Business and Professions Code has to do with the examination and licensing of contractors and vests those duties and powers in the Contractors' State License Board. Article 7 of this same chapter provides for disciplinary proceedings against contractors, and for review of the board's actions by the courts. Section 7110 of the same chapter provides as follows:

"Wilful or deliberate disregard and violation of the building laws of the State, or of any political subdivision thereof, or of the safety laws or labor laws or compensation insurance laws of the State constitutes a cause for disciplinary action."

Section 6 of article XI of the Constitution, generally referred to as the home rule amendment, gives certain chartered cities exclusive control over municipal affairs. Section 1 of article I of the Fresno Charter (Stats. 1921, p. 1821) accepts the power tendered by the Constitution so that it must be conceded that the city has exclusive control of its municipal affairs. The first question confronting us is whether or not an examination of electricians prior to their licensing to permit them to do business within the city is a municipal affair.

What is strictly a municipal affair is not always easy of determination. In *Butterworth* v. *Boyd*, 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838], it was said:

"No exact definition of the term 'municipal affairs' can be formulated, and the courts have made no attempt to do so, but instead have indicated that judicial interpretation is necessary to give it meaning in each controverted case. The comprehensive nature of the power is, however, conceded in all the decisions, and it is recognized that it is not fixed but fluctuates in scope, and that changes in conditions make necessary new and broader applications thereof."

The generally approved rule on the question seems to be that if the subject matter affected by the state legislation is of state-wide concern and deals with matters beyond the

exclusive control of the municipality, it is not a municipal affair subject to local control. (See *Department of Water and Power* v. *Inyo. Chemical Co.,* 16 Cal.2d 744 [108 P.2d 410]; *Pipoly* v. *Benson,* 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515]; *Wilkes* v. *City and County of San Francisco,* 44 Cal. App.2d 393 [112 P.2d 759]; *Lossman* v. *City of Stockton,* 6 Cal.App.2d 324 [44 P.2d 397]; *Ryan* v. *San Diego Electric Ry. Co.,* 52 Cal.App.2d 460 [126 P.2d 401]; *Phelps* v. *Prussia,* 60 Cal.App.2d 732 [141 P.2d 440].)

Many additional cases illustrating what are and what are not municipal affairs are cited in 18 California Jurisprudence, page 783, sections 95 and 96, and under the same sections in volume 8, ''Municipal Corporations'' of the Ten Year Supplement.

It is apparent that the state has adopted a broad and comprehensive plan for licensing contractors throughout the entire state, for examination as to their qualifications and fitness to engage in their various activities, for licensing only those who prove themselves qualified by satisfactorily passing examinations, and for punishing those who prove themselves incompetent or unfaithful to the trust imposed in them. This is a matter of state-wide concern and is not one that can be safely entrusted to regulation by each chartered city. Residents of the smaller municipalities and of rural districts are as much concerned with the safety of their citizens and the property within their limits as those in the larger cities that may operate under charters.

As the licensing of contractors throughout the state is a matter of general and state-wide concern we must conclude that it is not a municipal affair that concerns only the inhabitants of a chartered city and which is subject to local regulation such as that attempted to be imposed by the city of Fresno.

In *Pipoly* v. *Benson, supra,* in discussing the question of municipal affairs and the right of a chartered city to legislate on a subject fully covered by a state law, it is said:

''This general rule permitting the adoption of additional local regulations supplementary to the state statutes is subject to an exception, however, which is important in the present case. Regardless of whether there is any actual grammatical conflict between an ordinance and a statute, the ordinance is invalid if it attempts to impose additional requirements in a field which is fully occupied by the statute.''

In *Ex parte Grey,* 11 Cal.App. 125 [104 P. 476], it appears that the Legislature had passed a general law requiring master or journeyman plumbers to obtain a license from the board of health of a city in order to carry on business therein. In San Jose an ordinance was passed requiring such plumbers to secure licenses from a board of plumbing examiners, a board differing in personnel from the board of health. Grey was convicted and imprisoned for violating the city ordinance. In ordering his release the court said:

"The act just quoted makes it the express duty of the board of health in any incorporated city to examine plumbers, and to issue a license to them if found qualified after such examination. The law is general, uniform in its operation, and applies to every board of health in every incorporated city and every city and county in the State. The ordinance of the city of San Jose attempting to delegate to the board of police and fire commissioners the power to appoint a board of plumbing examiners to examine and issue licenses to plumbers is in conflict with the general law, and hence void." (See, also, *In re Means,* 14 Cal.2d 254 [93 P.2d 105].)

The argument that the ordinance of the city of Fresno does not, as a matter of fact, conflict with the State Contractors' Law divides itself into two parts: First, that it is a reasonable police regulation passed under the general police powers of the city under the provisions of section 11 of article XI of the Constitution, and, second, that in the exercise of this police power the city has required a higher degree of skill and efficiency of the contractors than does the state law.

We may concede that the examination and licensing of electricians comes under the general police powers as an endeavor to protect property and promote the safety of citizens.

We find nothing in the record before us, other than statements in the brief of defendants, indicating that in taking the city examination the applicant for a city license must exhibit a greater degree of skill and efficiency than is required by the state law. In both the state law and the city ordinance the details of examinations to be given are left to the examining boards. However, we regard this matter as unimportant as "the ordinance is invalid if it attempts to impose additional requirements in a field which is fully occupied by the statute." (*Pipoly* v. *Benson, supra.*)

The state license implies permission to the licensee to conduct his business at any place within the state. This per-

mission should not be circumscribed by local authorities. This does not limit the right of local governmental agencies to protect property and life through the enforcement of local regulations as to the quality and character of the installations. The right to enforce local ordinances is still in the hands of municipalities through the power of inspections and permits. In fact section 7110 of the Business and Professions Code shows clearly the intention of the Legislature to have state authorities assist in the enforcement of local ordinances pertaining to electrical installations.

If the arguments of defendants are sound, and if they should be sustained, there is no reason why the city of Fresno could not require lawyers, doctors, dentists, and others holding state licenses, to pass other and more strict examinations before being permitted to practice there.

The judgment is reversed with instructions to overrule the demurrer and give defendants a reasonable time in which to answer if they be so advised.

Griffin, Acting P. J., concurred.

Barnard, P. J., being disqualified, did not participate.

Respondents' petition for a hearing by the Supreme Court was denied July 8, 1946.