[Civ. No. 19013.   Second Dist., Div. One.   Nov. 10, 1952.]

J. D. LYNCH, Respondent, v. CITY OF LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and James A. Doherty, Deputy City Attorney, for Appellants.

Anderson & Anderson and Trent G. Anderson for Respondent.

THE COURT.—This is an appeal by the city and the chief of the electrical division of the Department of Building and Safety, from a judgment granting an injunction against the enforcement of city ordinance No. 94073, requiring state-licensed electrical contractors to pay a fee of $100 per year, and to post a surety bond conditioned on compliance with the local law, as a condition precedent to the issuance of permits to do electrical contracting work within the city.

The amended complaint recites that respondent is an electrical contractor licensed under the state Contractor's License Act and that ''his earnings as a contractor, 90% of which are from work done within the City of Los Angeles, are the sole means of support for himself and his family.'' On February 1, 1951, ''respondent was refused the electrical wiring permit for which he applied by reason of the fact that he had not paid permit service fees in the sum of $200.00 (for the years 1950 and 1951) and had not posted the bond required.'' The complaint alleges that the ordinance in question is regulatory, arbitrary, unreasonable, discriminatory and uncertain, and requires the fee to be paid regardless of whether or not certain inspections, etc., are ever made. It is alleged that the city has no power to impose such restrictions upon contractors licensed by the state. The trial court sustained respondent's contentions and found that the ordinance in question represents an attempt by the city to legislate in a field fully covered by state law.

It is appellants' contention that the ordinances in question are valid under the police power; that the amount of the permit service fee is not unreasonable in view of the number of inspections necessary, information service afforded contractors, etc.; that the $1,000 bond required, conditioned to be ''paid to any person who has suffered damage by reason of the violation of any of the provisions of this Chapter,'' does not conflict with the general law; that the provision for collection of permit service fees is not void for uncertainty or indefiniteness, and is not regulatory in nature, but ''is purely and simply a charge for services'' and reasonable in amount.

Respondent's brief calls attention to the case of *Agnew* v. *City of Los Angeles*, 110 Cal.App.2d 612, 623 [243 P.2d 73], decided April 29, 1952, which involves the same issues as those presented in the instant case. In the Agnew case, as here, the lower court granted an injunction against the enforcement of sections 93.64 and 93.65 of the Electrical Code of Los Angeles, requiring payment of permit service fee of $100 and the posting of a $1,000 bond, the same ordinances involved in the present appeal. The reviewing court affirmed the judgment, holding that these sections "attempt to impose additional requirements in a field which is fully occupied by the general (state) law, and are unconstitutional since they conflict with the provisions of the Business and Professions Code providing for licensing and regulating contractors, by attempting to legislate upon a subject intended to be fully covered by an Act of the Legislature." A motion for rehearing was denied; a petition for a hearing in the Supreme Court was likewise denied.

In appellants' reply brief, it is contended that the Agnew opinion misconstrues the previous case of *City & County of San Francisco* v. *Boss*, 83 Cal.App.2d 445 [189 P.2d 32]; that "The record of this case supplies factual deficiencies noted in the Agnew case," in that the present record shows what services were offered by the city in consideration for payment of the permit service fee, and that the plaintiff herein received such services. It is also argued that the Agnew opinion "misconstrues the law relating to charges made under the police power," and that "The requirement of a bond has been inadequately considered."

The case of *City & County of San Francisco* v. *Boss,* 83 Cal.App.2d 445 [189 P.2d 32], just mentioned, held that the city could not recover unpaid city license taxes from a painting contractor who had been licensed by the state but had not obtained a certificate required by the city. *Horwith* v. *City of Fresno*, 74 Cal.App.2d 443 [168 P.2d 767], also cited in the Agnew case, likewise held that the licensing of contractors by the state is a matter of general concern and not a municipal affair, and that the general law had fully occupied the field, saying: "The state license implies permission to the licensee to conduct his business at any place within the state. This permission should not be circumscribed by local authorities." In *Collins* v. *Priest*, 95 Cal.App.2d 179 [212 P.2d 269], it was similarly held that although a city ·may regulate sanitary matters, the imposition of additional

licensing requirements upon a plumber licensed by the state, is not justified. The Agnew decision (110 Cal.App.2d 612 [243 P.2d 73]) correctly followed these cases, and such holding is clearly applicable to the present appeal.

As said in the Agnew opinion, "Section 93.64 compels a state-licensed contractor to *register* with the electrical division of the Department of Building and Safety before he can obtain a permit for electrical installations and wiring in the city. . . . An application for a certificate of registration must be made in writing to the Board of Building and Safety Commissioners. (93.571) The commissioners prior to the issuance of the certificate of registration shall briefly examine the applicant and pass upon his qualifications and experience. . . . A certificate of registration may be suspended or revoked for specific reasons. (93.578.)"

The following quotation therefrom (*Agnew* v. *City of Los Angeles*, 110 Cal.App.2d 612, 619 [243 P.2d 73]), may likewise be noted, apropos the present appeal: "Sections 93.64 and 93.65 of the Los Angeles ordinance were enacted shortly after the decision in the Boss case (83 Cal.App.2d 445 [189 P.2d 32]). We think it apparent that they are an attempt, under the guise of regulating the quality and character of installations and exercise of the power of inspections and permits, to do what the Horwith and Boss decisions say cannot be done. . . . In enacting section 93.64 all that the city did, in effect, was to change the words 'registration fee' in section 93.573 to 'permit service fee,' and to add that the $100 shall be used to defray expenses. . . . Section 93.65 (requiring a bond) is identical with section 93.572."

It is fundamental that a mere change in terminology, leaving the situation substantially the same, is of no material importance. As in other cases, the courts are empowered to go beneath the surface, and disregarding any camouflage of language, determine the real nature of the controls imposed. In the present case it seems clear that the attempted municipal regulation is in direct interference with the licensing provisions enacted by the Legislature.

Appellants maintain that "The record in this case supplies factual deficiences noted in the Agnew case," in that evidence here shows what the "services" are that are mentioned in section 93.64 providing that an electrical contractor shall register and pay "a permit service fee of $100.00 to defray expenses of miscellaneous inspections, reinspections and other services not specifically mentioned"; that the respond-

ent having been the recipient of such services could not claim "that he had received no benefit for the fee charged; and that it would be presumed that the fees charged were reasonable.

The respondent's brief, however, calls attention to the testimony of appellant Tansey, chief of the electrical division, that the amount of the $100 fee was arrived at by considering the fact that the department was "in the red" $100,000, and "multiplied the number of contractors by a hundred dollars and concluded that $80,000.00 would at least partly offset the deficit." While that was not the only element considered, "We just simply lumped that one and let it go in on the basis of a hundred dollars." This testimony, says the respondent, "makes it very clear that the permit service fee was a plain, arbitrary improvisation to obtain a certain additional amount of money, having no relation to any services rendered." The fee required was the same for one month or one day, or one year, and was not one "imposed for the purpose of defraying the expenses incidental to the services in fact rendered and approximately commensurate with such expenses."

In respect to the city's requirement that a state licensed electrical contractor must post a bond before being permitted to do electrical work in the city, this is likewise a regulatory measure which to that extent nullifies the permission given by the state to conduct such business at any place within the state. The state law requires a bond only for reinstatement of a contractor. (Bus. & Prof. Code, § 70715.)

To finally sum up the matter in its legal aspect, appellants' argument tends to give first place to municipal regulatory powers and subjects state control to municipal limitation. This theory of operation is directly contrary to the well established rule, and should not be sanctioned either under so-called police power or otherwise. Nor should a contractor who has been duly licensed by the state be placed in such a confused and burdensome position.

As said in the Agnew case at page 616, "The intent of the Legislature in adopting the general scheme for the licensing and regulation of contractors is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. It was clearly the intention of the Legislature to declare that the licensing and regulation of contractors by the state shall be the only licensing and regulation in the state. This does not limit the right of a city or county to protect life and property by the enforcement of

local regulations as to the character and quality of electrical installations. (Bus. & Prof. Code, § 7110.)''

The ordinance regulations here under discussion requiring payment of the so-called ''permit service fee'' and the posting of a bond, are clearly objectionable as an attempt ''to legislate upon a subject intended to be fully covered by an act of the legislature.'' No merit is discovered in any of the appellants' contentions.

The judgment is affirmed.

A petition for a rehearing was denied December 1, 1952, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1953.