330 P.2d 385]

[L. A. No. 24734. In Bank. Oct. 17, 1958.]

R. W. AGNEW, Appellant, v. CITY OF LOS ANGELES
et al., Respondents.

(1)

McCOMB, J.—Plaintiff appeals from a judgment denying him an injunction that would restrain defendants from enforcing certain sections of the Municipal Code and the Electrical Code of the City of Los Angeles.

The trial court sustained defendants' demurrer to the complaint without leave to amend and entered judgment in favor of defendants.

Plaintiff also appeals from a minute order denying his motion for a temporary restraining order and for a preliminary injunction. Since this order dealt solely with the right to preventive relief pending final judgment and denied such relief, the entry of judgment rendered the question of the right to interim relief moot. The appeals from the order must therefore be dismissed.

*Facts:* Plaintiff is an electrical contractor, duly licensed by the state pursuant to the provisions of sections 7000-7145 of

the Business and Professions Code. The Business and Professions Code (div. 3, ch. 9), sometimes called the "Contractors' License Act," creates a "Contractors' State License Board," referred to as the board (Bus. & Prof. Code, § 7000); defines those coming within the jurisdiction of the board, including electrical contractors (§ 7026); prohibits any person from engaging in the business or acting in the capacity of a contractor without first having obtained a state license, and makes it a misdemeanor to do so (§§ 7028, 7030); provides for investigation and examination of applicants for license (§ 7072); requires the payment of an application fee, annual renewal fees, and penalties (§ 7137); makes elaborate provision for investigation of the acts of contractors, accusations against them, causes for disciplinary action, hearings, review, discipline, prosecution of violations of any law, and renewal or reissuance of suspended or revoked license (§§ 155, 7090-7122); and vests broad powers in the board relative to the licensing and regulation of contractors (§§ 7000-7145).

Wilful or deliberate disregard and violation of the building laws of the state, or of any political subdivision thereof, constitutes a cause for disciplinary action. (§ 7110.) Section 7071.5 provides that before reinstatement after disciplinary action the board may require the applicant to give a surety bond or make a cash deposit conditioned upon his compliance with the provisions of the act. Every person injured by the unlawful acts or omissions of such contractor may maintain an action on the bond or a claim on the deposit.

The action instituted by plaintiff challenges the constitutionality of, and seeks to obtain an injunction restraining defendants from enforcing against him, the provisions of sections 93.0201, 93.0204, 93.0205(2), 93.0501, 93.0504 and 93.0505 of the Electrical Code of the City of Los Angeles and sections 11.00, 21.03, 21.06, 21.08, 21.09, 21.12(a), 21.12(b), 21.188 and 21.190 of the Municipal Code of defendant city.

Section 93.0201 provides that no person shall install, alter, reconstruct or repair any electric wiring regulated by defendant city's Electrical Code without a permit from the Department of Building and Safety, hereinafter referred to as the department.

Section 93.0204 requires that an application for such permit shall be made to the department on a form furnished by the latter. The required information consists of a description of the proposed electric wiring, plans and specifications and a suitable diagram, and "such additional information as may be

considered necessary by the Department for the proper enforcement of the provisions of this Code.''

Section 93.0205 enumerates those to whom permits may be issued, including (subsection (a)-2) electrical contractors ''registered'' with the department.

Section 93.0501 is entitled ''Contractor Registration'' and provides in subsection (a) that ''Before any contractor licensed by the State of California shall be issued any permits, he shall be registered with the Department. The applicant shall provide sufficient information to enable the Department to determine if there is compliance with all applicable City and State Laws.

''(b) To register as a contractor, the responsible managing officer or responsible managing employee shall personally appear at an office of the Department and provide the following information:

''1. The business name and address as listed by the Contractors State License Board; and

''2. The names of the owners or officers of a corporation; and

''3. The Contractors State License with the number and classification; and

''4. The signature of the responsible managing officer or the responsible managing employee as listed by the Contractors State License Board; and

''5. License Tax Registration Certificate number.

''(c) The registrant shall notify the Department within 10 days of any change in the facts required by Subsection (b).

''(d) No registration shall authorize any person to do work which is not within the specific classification of the registration.

''(e) Every such registration shall expire on June 30 of each year.''

Section 93.0504 defines the regulations to which the foregoing certificate of registration shall be subject:

''1. Certificates of Registration shall not be transferable.

''2. Certificates of Registration shall become void 30 days after the holder who qualified by examination or experience ceases to have effective control over the work performed.

''3. Every Certificate of Registration shall expire on June 30 of each year unless sooner revoked or suspended by the Board. A Certificate of Registration may be renewed within 30 days after expiration without examination upon the payment of the annual registration fee as prescribed in this Code.

"4. The Board may revoke or suspend any Certificate of Registration for failure, refusal, or neglect of the holder to comply with the provisions of this Code or any provision of Section 98.00 of the Municipal Code as set forth therein.

"5. No Certificate of Registration shall authorize any person to do work which is not within the specific classification of the Certificate of Registration."

Section 93.0505 has no application to the issue presented on this appeal.

*The Law.* A local municipal ordinance that is in conflict with a general law adopted by the Legislature is invalid if it attempts to impose additional requirements in a field that is preempted by the general law. (Cal. Const., art. XI, § 11; *Tolman* v. *Underhill*, 39 Cal.2d 708, 712 [4] [249 P.2d 280]; *Pipoly* v. *Benson*, 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515]; *Atlas Mixed Mortar Co.* v. *City of Burbank*, 202 Cal. 660, 663 [2] [262 P. 334]; *Pasadena School Dist.* v. *City of Pasadena*, 166 Cal. 7, 9 et seq. [134 P. 985, Ann.Cas. 1915B 1039, 47 L.R.A. N.S. 892]; *James* v. *Myers*, 68 Cal.App.2d 23, 27 [1] [156 P.2d 69].)

 *Question: Has the state, by the adoption of division 3, chapter 9, sections 7000-7145, of the Business and Professions Code, preempted the field of regulating contractors?*

*Yes.* The sections of the Electrical Code of defendant city provide:

i. No person shall install wiring without a permit from the Department of Building and Safety. (The Business and Professions Code prohibits any person from engaging in the business or acting in the capacity of a contractor without first having obtained a license and makes it a misdemeanor to do so [§§ 7028, 7030].)

ii. To obtain a permit, one must submit proposed plans and "such additional information as may be considered necessary by the Department for the proper enforcement of the provisions of this Code." (The Business and Professions Code provides for investigation and examination of applicants for licenses [§ 7072].)

iii. To obtain a permit, the contractor must have registered with the department, and in order to register the contractor must appear personally at an office of the department and provide certain information, including his "License Tax Registration Certificate number." (The Business and Professions Code, in addition to prohibiting a person from

engaging in the business or acting in the capacity of a contractor without first having obtained a state license, provides for investigation and examination of applicants for licenses.)

iv. In order to obtain a license tax registration certificate number, the contractor must pay the city clerk a fee based on the amount of his gross receipts. (The Business and Professions Code requires the payment of an application fee, annual renewal fees, and provides for certain penalties [§ 7137].)

v. The registration certificate of the contractor can be revoked or suspended for "failure, refusal, or neglect of the holder to comply with the provisions of this Code or any provisions of Section 98.00 of the Municipal Code as set forth therein." (The Business and Professions Code makes elaborate provision for investigation of the acts of contractors, accusations against them, causes for disciplinary action, hearings, review, discipline, prosecution for violations of any law, and renewal or reissuance of suspended or revoked license [§§ 155, 7090-7122], and vests broad powers in the board relative to the licensing and regulation of contractors [§§ 7000-7145].)

It clearly appears from the foregoing that the state has occupied the field of licensing electrical contractors and that therefore the ordinances here under attack are invalid to the extent that they conflict with the Business and Professions Code. (*Agnew* v. *City of Culver City*, 147 Cal.App. 2d 144 [304 P.2d 788] ; *Lynch* v. *City of Los Angeles*, 114 Cal. App.2d 115 [249 P.2d 856] ; *City & County of San Francisco* v. *Boss*, 83 Cal.App.2d 445 [189 P.2d 32].)

The only material difference between the ordinance held invalid in *Agnew* v. *City of Culver City, supra*, and the ordinance here involved is that the former imposed a fee of $100, while in the instant case the fee varies according to the amount of the contractor's gross receipts, the minimum being $12.

In *City & County of San Francisco* v. *Boss, supra*, the fee was only $10, but the court, in holding the ordinance invalid, pointed out, at page 446, that the ordinance said: "Any certificate of registration may be revoked for any act of the person so registered showing said person to be *dishonest* or guilty of the violation of any rule or regulation, either *state* or municipal, regulating or governing contractors." (Italics added.) In such case, the court held that the state law had preempted the field. The only differences between the language

just quoted and the corresponding language in the ordinance under attack are, in effect, the foregoing italicized words.

The foregoing cases are directly in point and lead to the inescapable conclusion that the state has preempted the field here involved and that defendant city's ordinances are therefore invalid.

■ Of course, as contended by defendants, a municipality may tax electrical contractors, as other trades, professions and businesses are taxed. The fees in the present case, however, are exacted not as a business tax but as the price of a license that the city cannot require.

The judgment is reversed. The purported appeals from the order denying motions for a temporary restraining order and for a preliminary injunction are dismissed. Plaintiff is to recover his costs on appeal.

Gibson, C. J., Carter, J., Traynor, J., and Schauer, J., concurred.

SHENK, J., Dissenting.—The questions involved in this case are whether the city of Los Angeles can impose a business license tax on a person conducting an electrical contracting business within the city, and whether the city can establish and enforce local regulations as to the quality and character of installations by one who is licensed to conduct that business within the state.

It is conceded that insofar as the state has occupied the field the city cannot impose regulations which are conflicting or even concurrent therewith. (*Tolman* v. *Underhill*, 39 Cal.2d 708, 712 [249 P.2d 280].) We are required then, to determine the extent to which the state purports to regulate in these areas.

First, directing attention to the imposition of the business license tax alone, there can be no question but that the state in providing for the licensing of electrical contractors does not purport to levy a license tax on the doing of business by an electrical contractor. Also, the decisions in this state are uniform in holding that the imposition of a license tax by a municipality is not a preemption of the state-wide licensing provisions. (*In re Galusha*, 184 Cal. 697, 699 [195 P. 406] ; *City of San Mateo* v. *Mullin*, 59 Cal.App.2d 652, 654 [139 P.2d 351].) The challenged sections which impose the license tax (Municipal Code of the defendant city, §§ 11.00, 21.03, 21.06, 21.08, 21.09, 21.12(a), 21.12(b), 21.188 and 21.190)

are, on their face, the usual type of license tax. They provide generally that the tax be paid by every person who is engaged within the city in any one of a great variety of business activities, including electrical contractors; that the minimum tax is $12 (representing 0.1 per cent of the first $12,000 of gross receipts); that the minimum tax is paid in advance annually, and that upon payment a "License Tax Registration Certificate" is issued.

It is established that freeholder charter cities are empowered to exact business license taxes for revenue purposes. This court has recently held: "It is well settled that the power of a municipal corporation operating under a freeholders' charter . . . to impose taxes 'for revenue purposes, including license taxes, is strictly a municipal affair' pursuant to the direct constitutional grant of the people of the state (Const., art. XI, § 6; *West Coast Advertising Co.* v. *City & County of San Francisco*, 14 Cal.2d 516, 524 [95 P.2d 138]), and that 'the restrictions on the exercise of that power are only the limitations and restrictions appearing in the Constitution and in the charter itself.' " (*Ainsworth* v. *Bryant*, 34 Cal.2d 465, 469 [211 P.2d 564]; see also *City of Glendale* v. *Trondsen*, 48 Cal.2d 93, 99 [308 P.2d 1]; *Ex Parte Braun*, 141 Cal. 204, 213 [74 P. 780].) From the foregoing it is apparent that the State Contractors Licensing Act (Bus. & Prof. Code, § 7000 et seq.) not only was not intended to, but could not limit the city's power to levy and collect a proper business license tax. In *Franklin* v. *Peterson*, 87 Cal.App.2d 727 [197 P.2d 788], the court had before it the same provisions of the Los Angeles Municipal Code that are now before this court. In refuting the contention of an attorney licensed to practice law under a general statute that the imposition of the license tax was a preemption of the state-wide statute, the court stated at pages 731-732: "Conceding that a license requirement cannot be imposed upon a lawyer, nor his business be regulated by ordinance, the tax provided for in the ordinance here under consideration is levied upon the business of practicing law, rather than upon a person because he is an attorney at law. A license to practice law does not carry with it exemption from taxation. . . . The Los Angeles ordinance does not attempt to regulate the professions, business or occupations which are subject to the tax. It provides only for a license for revenue purposes, and is not a regulatory measure affecting the business or profession so taxed." The Peterson case

was cited with approval by this court in *City of Los Angeles* v. *Rancho Homes, Inc.*, 40 Cal.2d 764, 771 [256 P.2d 305].

In spite of the foregoing uniform and overwhelming holdings to the contrary the majority of this court has, without mention of the established law and the many decisions pertaining thereto, declared the invalidity of the license tax provisions, as well as the regulatory provisions of the Electrical Code of the City of Los Angeles. The majority's conclusion that license taxes in the present case "are exacted not as a business tax but as the price of a license that the city cannot require," is definitely contrary to the settled law of this state. It is urged in support of such a conclusion that the city's License Tax Registration Certificate is nothing more than the city's permit to engage in business, but such a contention can be made only upon the failure to recognize the purpose and effect of the certificate. That purpose is required by section 21.08 to be stated on the face of each certificate as follows: "This license tax registration certificate signifies that the person named on the face hereof has fulfilled the requirements of section 21.03 L.A.M.C., by registering with the City Clerk for the purpose of paying license taxes for the classification of business for which the certificate is issued. . . ." Thus, it must be conceded that the certificate is not a permit to do business, and that the exaction of the license tax for revenue purposes is not an encroachment upon the state's exclusive right to determine who shall engage in electrical contracting. Conversely, no one will argue that the State Contractors Licensing Act is a revenue raising measure which prohibits a proper local revenue measure. The purpose of the act is " 'for the safety and protection of the public' against imposition (*Gatti* v. *Highland Park Builders, Inc.*, 27 Cal.2d 687, 690 [166 P.2d 265]). . . ." (*Franklin* v. *Nat C. Goldstone Agency*, 33 Cal.2d 628, 632 [204 P.2d 37].) Obviously, the collection of fees for administrative costs pursuant to such an exercise of the state's police power is not intended as a revenue raising measure.

In addition to the authority vested in the City of Los Angeles to enact revenue raising measures, power is also vested in the city to enact, under its police power, measures for the protection of its citizens, their lives and property. The challenged provisions of the electrical code are proper exercises of that power. An examination of the provisions in question discloses that they only regulate the quality and character of electrical installations, and do not attempt to

determine the qualifications of those persons who may make such installations.

Among others the plaintiff relies on the case of *Horwith* v. *City of Fresno*, 74 Cal.App.2d 443 [168 P.2d 767], for the proposition that a local ordinance is in conflict with general law if it attempts to impose requirements in a field fully occupied by the general state-wide law. Nevertheless it was said in that case at page 449: "This does not limit the right of local governmental agencies to protect property and life through the enforcement of local regulations as to the quality and character of the installations. The right to enforce local ordinances is still in the hands of municipalities through the power of inspections and permits."

In the present case it appears that objection is primarily made to the use of the term "permit"; but it is apparent that the permit required by the electrical code is one for which every state licensed electrical contractor may qualify. No fee is required to be paid, no bond is required to be posted, no examination is made, no investigation is conducted and no suspension is provided for upon a showing of lack of good character or a violation of general or local law. Nevertheless the majority concludes that the provisions constitute an invasion of the general licensing statutory provisions, and cite in support thereof decisions of the District Court of Appeal all of which, on examination, are distinguishable and not in point.

In *Lynch* v. *City of Los Angeles*, 114 Cal.App.2d 115 [249 P.2d 856], the then existing provisions of the Los Angeles Electrical Code were declared invalid on the ground that: "The ordinance regulations . . . requiring payment of the so-called 'permit service fee' and the posting of a bond, are clearly objectionable as an attempt 'to legislate upon a subject intended to be fully covered by an act of the legislature.' " The present provisions of the city's electrical code were adopted following the decision in the Lynch case and contain none of the provisions held to be objectionable in that case. In *City & County of San Francisco* v. *Boss*, 83 Cal.App.2d 445 [189 P.2d 32], it appears that state-licensed contractors were required by the local ordinance to acquire a registration certificate; that an application fee of $10 was required; that an investigation of the factual matter was to be conducted and the certificate issued only "if the facts set forth in said application are found to be true," and that the certificate was to be revoked upon showing "said person to be dishonest

or guilty of the violation of any rule or regulation, either state or municipal, regulating or governing contractors.'' In the third decision relied on by the majority, *Agnew* v. *City of Culver City*, 147 Cal.App.2d 144 [304 P.2d 788], it appears that an ordinance of the City of Culver City provided ''for licensing and regulating electrical contractors and fixing fees to be charged electrical contractors as a condition precedent to engaging in electrical contracting in Culver City. . . .'' A license fee of $100 was required to obtain a business license to do work as an electrical contractor in the city.

The provisions of the city's electrical code here challenged have none of the objectionable features of the foregoing cases. They represent reasonable measures to insure compliance with the municipality's endeavors to protect the lives and property of its citizens and other inhabitants. Certainly it should not be said that a municipality cannot determine that one who professes to be a state-licensed contractor is in fact in good standing as such and is licensed in a particular category; that the installations such a contractor proposes to make will conform both to his license and to applicable building codes; that statistical information concerning the contractor be recorded and made available to those who may be damaged by his failure to comply with applicable local regulations, and that the contractor has complied with proper local business license tax provisions. The challenged provisions in the present case provide only for the foregoing determinations, and the required permit is nothing more than evidence that such determinations have been made or will be made by the municipality.

The decision in this case will create great confusion in freeholder charter cities as to what is and what is not a municipal affair. The distinction between the two for the purposes of this case is adequately dealt with by Mr. Presiding Justice White in his opinion in this case in the District Court of Appeal, in which his associates concurred. I adopt that opinion as a further expression of my views. It is found in (Cal.App.) 323 Pacific Reporter 2d Series, at page 165. The judgment should be affirmed.

Spence, J., concurred.

Respondents' petition for a rehearing was denied November 14, 1958, and the opinion was modified to read as printed above. Shenk, J., and Spence, J., were of the opinion that

the petition should be granted. The following opinion was then filed:

SHENK, J., and SPENCE, J.—On petition for rehearing we are of the opinion that the modification of the original opinion ordered by this court on denial of petition for rehearing does not adequately cure the defects pointed out in the dissenting opinion and that the petition for rehearing should be granted.