Filed 1/18/24  Mid-Sunset Neighborhood Assn. v. Tenderloin Neighborhood Development CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MID-SUNSET NEIGHBORHOOD ASSOCIATION, INC.<br><br>Plaintiff and Appellant,<br><br>v.<br><br>TENDERLOIN NEIGHBORHOOD DEVELOPMENT CORPORATION,<br><br>Defendant and Respondent. | A164539, A166779, A167307<br><br>(City & County of San Francisco Super. Ct. No. CGC21596994) |

The Board of Supervisors of the City and County of San Francisco adopted a resolution approving loan documents in which the City, acting through the Mayor's Office of Housing and Community Development (MOHCD), agreed to provide financing to a California limited partnership established by defendant Tenderloin Neighborhood Development Corporation (Tenderloin) for the development of affordable housing.  The resolution included a provision "urg[ing]" MOHCD and Tenderloin to "have a transparent community process to find an equitable balance between the goal of maximizing housing units and addressing concerns of nearby residents about height and scale, within existing zoning and feasibility[.]"

Mid-Sunset Neighborhood Association, Inc. (Mid-Sunset), a nonprofit corporation comprised of residents who live near the project site, claims to be a third-party beneficiary of the contract between Tenderloin and the City.  It

sued Tenderloin (but not the City) for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and declaratory relief, alleging that Tenderloin violated an obligation to be transparent and address residents' concerns about the project. It then moved for a preliminary injunction to enjoin Tenderloin from proceeding with its project, which the trial court denied.

While Mid-Sunset's appeal from the order denying the preliminary injunction was pending, the trial court entered judgment in favor of Tenderloin after sustaining its demurrer to Mid-Sunset's second amended complaint without leave to amend. We consolidated Mid-Sunset's appeals from the order sustaining the demurrer and the resulting judgment with its appeal from the order denying the preliminary injunction. We now affirm the judgment and dismiss the appeal from the order denying the preliminary injunction as moot.

## BACKGROUND

In November 2019, San Francisco voters approved Proposition A, authorizing the issuance of General Obligation Bonds for affordable housing. MOHCD then published a Notice of Funding Availability for affordable multifamily rental housing.

In January 2020, Tenderloin submitted its proposal to MOHCD for the acquisition and development of real property located at 2550 Irving Street in San Francisco (the subject property). Over a year later, the Board of Supervisors (the Board) adopted a resolution authorizing the Director of MOHCD to execute loan documents to provide financing for the acquisition of the subject property, and for "predevelopment activities for a 100% affordable multifamily rental building[.]" Set forth in a separate paragraph of the resolution is what Tenderloin calls the "urging clause" and Mid-Sunset calls

2

the "equitable balance condition."  It states, "[T]he Board of Supervisors urges MOHCD and [Tenderloin] to have a transparent community process to find an equitable balance between the goal of maximizing housing units and addressing concerns of nearby residents about height and scale, within existing zoning and feasibility . . . ."

In December 2021, Mid-Sunset sued Tenderloin over its plans to develop the subject property into a multifamily residential building.  A few days later, Mid-Sunset moved for a preliminary injunction prohibiting Tenderloin "from taking any further action in furtherance of its Project Application in the Planning Department" or in furtherance of its development of the subject property "until such time after it meets and engages in good faith substantive discussions with [Mid-Sunset] and reaches an equitable balance between the goal of maximizing housing units and addressing concerns of nearby residents about height and scale[.]"  The trial court denied the motion, and Mid-Sunset appealed from the order.

While that appeal was pending, Mid-Sunset filed a second amended complaint (which, as the operative pleading, we will refer to simply as the complaint) after the court sustained Tenderloin's demurrer to the first amended complaint with leave to amend.  The complaint alleges that residents of the neighborhood first learned of Tenderloin's proposed project in December 2020, when the District 4 Supervisor, Supervisor Mar, informed residents that the project was for 98 units and that the planned building would be seven stories tall.  Thereafter, Tenderloin held virtual community meetings on Zoom but did not "more than minimally" address residents' concerns regarding the height and scale of the proposed development.  Mid-Sunset and three other organizations wrote a letter to the Board, stating in part that the scale and height of the proposed seven-story building would

3

alter the character of the neighborhood and that the building "would tower over" the surrounding homes, blocking the sun.

The complaint further alleges that when the Board heard public comment on the resolution to authorize the Director of MOHCD to execute loan documents for the project, Supervisor Mar spoke in support of Mid-Sunset and the neighborhood's concerns regarding Tenderloin's proposed project. When it became apparent that Supervisor Mar was not going to get enough votes to reject the proposal, he added an amendment to the resolution that "asked" Tenderloin and MOHCD to "have a transparent community process to find an equitable balance between the goal of maximizing housing units and addressing concerns of nearby residents about height and scale, within existing zoning and feasibility." The Board approved the resolution as amended. According to the complaint, the "drafters" of the resolution "intended that [it] incorporate other loan documents which are referenced in the Resolution[,]" and the resolution and loan documents "were intended to be binding on [Tenderloin]."

The complaint alleges that from August to November 2021, Mid-Sunset and its representatives attempted to meet with Tenderloin and its architect to discuss an equitable balance between the goals of maximizing housing units and the residents' concerns about height and scale. Tenderloin allegedly ignored Mid-Sunset.

The complaint asserts causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, negligence, and declaratory relief. The first two causes of action are based on allegations that the resolution, "including loan documents specifically incorporated by reference . . .," constituted a contract between Tenderloin and the City, of which Mid-Sunset is a third party beneficiary because it benefits from the

4

provision "asking" Tenderloin to address residents' concerns regarding the height and scale of the proposed project. In support of its cause of action for negligence, Mid-Sunset alleges that Tenderloin owed it a duty to exercise reasonable care in "being forthright and transparent in its development plans" and in remediating "[perchloroethylene] contamination through its design and development of the subject property."

Tenderloin demurred to each cause of action in the complaint and requested judicial notice of the resolution and of the loan documents. The court sustained the demurrer without leave to amend, and thereafter entered judgment in favor of Tenderloin. Mid-Sunset filed separate notices of appeal from the judgment and from the order sustaining the demurrer. We consolidated those appeals with Mid-Sunset's appeal from the order denying its motion for preliminary injunction.

## DISCUSSION

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We review the complaint "de novo to determine whether the complaint alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law."[1] (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) We construe the complaint in a reasonable manner and assume the truth of properly pleaded factual allegations that are not inconsistent with other allegations, exhibits, or judicially noticed facts. (*Genis v.*

---

[1] While we would apply an abuse of discretion standard to review the trial court's denial of leave to amend (*Blank v. Kirwan, supra*, 39 Cal.3d at p. 318), Mid-Sunset does not challenge this aspect of the trial court's ruling in its briefing, arguing only that the causes of action were adequately alleged.

*Schainbaum* (2021) 66 Cal.App.5th 1007, 1015.) We need not accept as true, however, contentions, deductions, or conclusions of fact or law. (*Blank*, at p. 318.) Mid-Sunset, as the appellant, bears the burden of demonstrating that the trial court erred. (*Aguilera*, at p. 595.)

## I.    Breach of Contract and Breach of the Implied Covenant

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489.) Here, Mid-Sunset's breach of contract claim is based on Tenderloin's alleged breach of the resolution's "equitable balance condition" or "urging clause."[2] Tenderloin contends that the complaint does not adequately allege facts to establish that it had a contractual obligation to comply with that provision of the resolution, arguing that while a governmental entity may assume contractual obligations for itself by resolution (see *Retired Employees Assn. of Orange County, Inc. v.*

---

[2] In support of the breach of contract claim, the complaint also alleges that Mid-Sunset "benefits from enforcement of the provision [in the resolution] that [Tenderloin] submit a Response Plan for remediation of PCE contamination that meets DTSC approval." Mid-Sunset does not address whether it has adequately alleged a breach of contract claim based on that clause in the resolution. Although our review is de novo, "it is limited to issues which have been adequately raised and supported in plaintiffs' brief." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979.) "Issues not raised in an appellant's brief are deemed waived or abandoned." (*Reyes v. Kosha, supra,* 65 Cal.App.4th at p. 466, fn. 6, citing *Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811.)

*County of Orange* (2011) 52 Cal.4th 1171, 1187), it cannot by the same method impose contractual obligations on another party. We agree.[3]

The existence of a contract depends, among other things, on the ability of the party claiming the existence of a contract to plead that both parties consented to the terms of the alleged contract. (Civ. Code, §§ 1550, 1580.) "Without mutual assent, there is no contract." (*Merced County Sheriff's Employee's Assn. v. County of Merced* (1987) 188 Cal.App.3d 662, 670.) Because a resolution is a unilateral act by a governmental body, it cannot, on its own, impose a contractual obligation on another party. While it can memorialize an agreement the parties have reached (*Baldwin v. City of Los Angeles* (1999) 70 Cal.App.4th 819, 838), it cannot create a new term enforceable against the other party because the requirement of mutual assent means there must be some act by the other party manifesting its agreement. If Tenderloin has a contractual obligation "to have a transparent community process to find an equitable balance between the goal of maximizing housing units and addressing" residents' concerns regarding height and scale, it must come from an agreement to which Tenderloin is a party, not from the resolution.

---

[3] We also agree with Tenderloin that the word "urges" as used in the resolution would not create an enforceable obligation in any event. It is a term of pleading or encouragement, however insistent, that falls short of *requiring* the parties to undertake a course of action. (See *AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 814 [courts are to construe contractual language "according to the mutual intentions of the parties and its 'plain and ordinary' meaning"].) But because we conclude that Mid-Sunset has not adequately alleged that this provision was a term of any contract between Tenderloin and the City, we need not resolve Mid-Sunset's contract-based claims on that basis. For the same reason, we need not consider whether Mid-Sunset has adequately alleged its status as a third-party beneficiary.

7

Mid-Sunset argues that it alleged facts showing "that the loan documents referenced in the Resolution are consistent with the Resolution regarding the conditions imposed upon [Tenderloin] in the Resolution, in particular, the equitable balance condition." But there is no allegation in the complaint that this clause or condition is a term of the loan documents themselves; if it were, there would be no need for Mid-Sunset to rely on the resolution.[4] The complaint does allege that Tenderloin "agreed to meet the conditions set forth in the Resolution and other loan documents incorporated by reference in exchange for receiving" loan monies from the City, and that Tenderloin, "as a condition of receipt of loan proceeds, in other documents and communications reiterated its agreement to comply with all the obligations set forth in the Resolution and loan documents, including . . . finding an equitable balance between the goal of maximizing housing units and addressing concerns of nearby residents about height and scale, within existing zoning and feasibility." But these conclusory allegations are insufficient. Beyond our disagreement with Mid-Sunset's legal conclusion that this clause or condition was an obligation the resolution imposed on Tenderloin, the complaint does not allege any facts showing when or how Tenderloin elsewhere agreed to comply with it, or that its putative commitment to do so, whenever and to whomever it was made, created an enforceable contract in which Tenderloin assumed a new obligation as a

---

[4] Because the complaint does not identify the loan documents as the source of Tenderloin's obligation, we need not address Mid-Sunset's argument that the trial court improperly took judicial notice of them. (See *West Valley-Mission Community College Dist. v. Concepcion* (1993) 16 Cal.App.4th 1766, 1778 [error in taking judicial notice was harmless].) Mid-Sunset does not dispute that the resolution was judicially noticeable.

8

condition of receiving loan proceeds that was not contained within the loan documents.

We therefore affirm the trial court's ruling insofar as it sustained the demurrer to Mid-Sunset's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (See *Guz v. Bechtel National Inc.* (2000) 24 Cal.4th 317, 349–350 [the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement"].)

## II. Negligence

To state a claim for negligence, a plaintiff must allege, among other things, "a legal duty to use reasonable care." (*Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339.) Although the legal conclusion that a duty of care exists "is neither necessary nor proper in a complaint, facts that cause it to arise (or from which it is 'inferred') are essential to the cause of action." (4 Witkin, Cal. Procedure (6th ed. 2023) Pleading, § 585.) In support of its demurrer to the complaint, Tenderloin argued that Mid-Sunset had not alleged facts giving rise to a legal duty.

Mid-Sunset asserts that it stated a negligence claim for non-economic harm by alleging that Tenderloin "owed plaintiff an obligation to remediate and not cause further environmental harm and PCE contamination through its design and development of the subject property," and Mid-Sunset suffered "non-economic harm" as a result of defendant's "failure to use reasonable care in its design and development . . . ." Mid-Sunset does not expand on this assertion or cite any authority in support of its argument. It identifies no factual allegations establishing the existence of the duty, no factual allegations identifying how that supposed duty was breached, and no factual allegations establishing the nature of the non-economic harm. A reviewing

9

court is not required to examine undeveloped claims or make appellant's arguments for it. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) It is the appellant's burden to show the demurrer was sustained erroneously. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) As Mid-Sunset has failed to do so with a proper duty analysis, it has not met its burden.

Mid-Sunset further argues that it stated a negligence claim for economic harm under *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), which provides an exception to the general rule of no-recovery for negligently inflicted purely economic losses when the plaintiff and the defendant have a special relationship. (See generally *Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 400.) Mid-Sunset cites the allegations in the complaint that a special relationship existed between Tenderloin and Mid-Sunset "because the City loan application required defendant to include a community engagement plan" and that Tenderloin "owed [Mid-Sunset] a duty to exercise reasonable care in, among other things, being forthright and transparent in its development plans and regarding the toxicity at the development site and the impacts of the development on the homes of the nearby residents."

*Biakanja* involved a claim brought by the intended beneficiary under a will against the notary whose negligence in preparing it caused the plaintiff to recover only one-eighth of the estate. (*Biakanja, supra*, 49 Cal.2d at p. 648.) The court held that the negligent performance of a contractual obligation, resulting in the damage to the property or economic interests of a person not in privity, could support recovery if the defendant was under a duty to protect those interests. (*Id.* at pp. 648–650.) "The determination whether in a specific case that defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various

10

factors," including "the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him," and "the policy of preventing future harm." (*Id.* at p. 650.)

However, as discussed above, the complaint does not allege facts sufficient to establish that Tenderloin had a contractual obligation, and in the absence of such an obligation, the complaint cannot allege that Tenderloin negligently performed it. (See *Pacific Rim Mechanical Contractors, Inc. v. Aon Risk Ins. Services West, Inc.* (2012) 203 Cal.App.4th 1278, 1291–1292 ["PacRim does not assert Aon breached any contract, which renders *Biakanja* inapplicable here"].) There are no allegations establishing a contractual duty on the part of Tenderloin to be transparent with Mid-Sunset regarding its development plans and the toxicity of the development site, so *Biakanja* does not apply. And as with its allegations of non-economic harm, Mid-Sunset's allegations of economic harm are similarly conclusory. Mid-Sunset has therefore failed to demonstrate that the trial court erred in sustaining Tenderloin's demurrer to the complaint's third cause of action for negligence.

## III. Declaratory Relief

In light of our conclusion that Mid-Sunset failed to state contract-based claims, we find no error in the trial court's ruling that Mid-Sunset failed to state a claim for declaratory relief, which sought a declaration of the parties' rights and duties under the resolution. A claim for declaratory relief fails when, as here, it is " ' "wholly derivative" ' of other failed claims." (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 191–192, quoting *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800.) The resolution did not impose any obligations on Tenderloin toward Mid-Sunset and did not confer

11

any rights on Mid-Sunset to assert against Tenderloin. Accordingly, Mid-Sunset is not entitled to any declaratory relief.

## IV. Preliminary Injunction Appeal

"A preliminary injunction is an interim remedy designed to maintain the status quo pending a decision on the merits." (*MaJor v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618, 623.) "It is not, in itself, a cause of action. Thus, a cause of action must exist before injunctive relief may be granted." (*Ibid.*) When a judgment of dismissal has been entered in the underlying action after a demurrer was sustained without leave to amend, and therefore no cause of action remains to support a preliminary injunction, "the question of the right to interim relief [is] moot." (*Agnew v. City of Los Angeles* (1958) 51 Cal.2d 1, 2; see also *Korean American Legal Advocacy Foundation v. City of Los Angeles* (1994) 23 Cal.App.4th 376, 399 [because court sustained demurrer to "the only causes of action which would have supported a preliminary injunction in plaintiffs' favor, their appeal from the denial of a preliminary injunction is dismissed as moot"].)

Because we are affirming the judgment in favor of Tenderloin, Mid-Sunset's appeal from the order denying its motion for preliminary injunction must be dismissed as moot. (See *Agnew v. City of Los Angeles, supra*, 51 Cal.2d at p. 2.)

12

## DISPOSITION

The judgment is affirmed.  The appeal from the order denying the motion for preliminary injunction is dismissed as moot.  Tenderloin is entitled to recover its costs on appeal.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
HIRAMOTO, J. *

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13